Duckworth et al., Appellants, *v.* Bennett.

Argued October 8, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*John Duggan, Jr.,* for appellants.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 25, 1935:

We are here called upon to review the action of the court below, in giving binding instructions for defendant, a physician and surgeon, in a suit brought against him, in which it is alleged he was guilty of malpractice in treating a patient, the minor plaintiff.

Appellant, about sixteen years of age, fell on the floor of his father's store, as a result, so he said, of his knee giving way. He went to bed, and, two days afterward,

consulted defendant, a physician and surgeon of twenty-eight years' experience, who was on the surgical staff of one of the Pittsburgh hospitals. The defendant examined him and diagnosed his complaint as an arthritis of the knee. The boy told the doctor that he had been treated for rheumatism by another physician for about a year, and that on his advice all the boy's upper teeth had been removed. As a part of the examination, the doctor measured the length of the boy's legs and found them equal, which negatived the idea of any trouble at that time in his hip. This examination took place on April 16, 1931.

Defendant prescribed a course of treatment for the arthritis, and ordered his patient to bed, where he remained for about six weeks, the doctor continuing to treat him. Ultimately, the swelling and inflamed condition of the knee, which had been apparent at the first examination, yielded to treatment, and improved, and the doctor resorted to gentle motion of the leg as a part of the cure. In so doing, on one of his visits, the doctor pushed the leg in towards the hip, and thus ascertained that there was not full movement there. Thereupon he advised that an X-ray be taken of the hip. This was done on June 18, 1931, and it developed what one doctor called by plaintiff designated a fracture of the femur, and what the defendant and four surgeons of established reputation and wide experience characterized as a separation of the epiphysis of the femur. The epiphysis is a cartilage attached to the femur which later turns to bone. The result of this fracture or separation is a shortening of plaintiff's leg an inch and a quarter.

The argument of appellant is that the condition from which he now suffers was the result of the fall, that although he complained of pain in his hip, defendant did not take an X-ray of the hip for eight weeks following the fall, that the failure so to do was improper and negligent, and the delay in thus ascertaining the seat of his trouble has resulted in making his injury permanent,

which could have been cured had defendant promptly and properly proceeded by using the X-ray to develop the true condition of his hip. There was testimony by the boy's parents that they had asked defendant to have an X-ray taken shortly after their son fell.

Defendant, by himself and the four surgeons whom he called, sought to establish that what was shown by the X-ray photograph was not a fracture of the femur but a slipping of the epiphysis (to this all the doctors called by defendant agreed), that this was not due to trauma but to infection, that the defendant's diagnosis of arthritis of the knee was correct; that there was nothing to put him on notice of anything wrong with the hip, since the measurement made at the time of the examination showed no disparity in the length of the legs; that the pain complained of in the hip could result from the condition of the knee; that a slipping of the epiphysis is very difficult to detect and diagnose; that there would be nothing to call the hip condition to defendant's attention until it was attracted by the manipulation of the leg; and that, under the circumstances, what defendant did was proper.

We think it could not be held to be negligence or unskillful treatment for a doctor not immediately to employ the X-ray in his investigation of a patient's condition; whether this or another method of inquiry shall be resorted to is a matter of judgment, and a failure to use the one or the other could not be said to be negligence. Where the most that the case discloses is an error of judgment on the surgeon's part, there is no liability: Williams v. LeBar, 141 Pa. 149, 159. Here, the doctor used his skillful fingers and trained observation to detect what was wrong. Neither court nor jury would be competent to set up an opinion counter to his, unless much more was shown than here appears. At most all that could be said is that defendant had made a mistake in diagnosis where the symptoms were obscure, and for this there is no liability: English v. Free, 205 Pa. 624;

Remley v. Plummer, 79 Pa. Superior Ct. 117. Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of his professional brethren in good standing in his community: Ibid. A physician is required to exercise only such reasonable skill and diligence as is ordinarily exercised in his profession: Saltzer v. Reckord, 319 Pa. 208.

Judgments affirmed.