475 A.2d 1314

**RIDDLE MEMORIAL HOSPITAL, Appellant,**

**v.**

**Evelene DOHAN, Executrix of the Estate of David Dohan, Deceased, Appellee,**

**and**

**Dr. C. Stephen Stahlnecker.**

**Appeal of RIDDLE MEMORIAL HOSPITAL.**

Supreme Court of Pennsylvania.

Argued April 11, 1984.

Decided May 24, 1984.

572

Charles W. Craven, William C. Beatty, Francis E. Marshall, Philadelphia, for appellant.

John S. J. Brooks, Media, for Dr. Stahlnecker.

Garland D. Cherry, Media, for Evelene Dohan.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Early on the morning of September 22, 1970, David Dohan, deceased husband of the Appellee Evelene Dohan, awoke complaining of pains in his arms. Shortly thereafter, Dohan complained of other symptoms which appeared to

him to indicate a heart attack. Upon Dohan's request, the Appellee contacted the family physician, Dr. C. Stephen Stahlnecker, who agreed to come immediately. When Dr. Stahlnecker had not arrived at the Dohan residence within a half hour, the Appellee contacted the Concordville Fire and Protective Association to have her husband taken to Riddle Memorial Hospital (Riddle). Riddle was a few miles from the Dohan residence. The Appellee thereafter advised Dr. Stahlnecker that she was taking her husband to Riddle. Dr. Stahlnecker then advised Riddle that Mr. Dohan, who was complaining of chest pains, would be coming to its emergency room. Dr. Stahlnecker was not on the staff at Riddle, but did have staff privileges at another community hospital, Lankenau Hospital. Mr. Dohan arrived at Riddle at 7:40 a.m., preceded by Dr. Stahlnecker by one or two moments. Mr. Dohan was taken to the emergency room which was staffed by a registered nurse, a practical nurse, a resident physician with a subspecialty in cardiology and an EKG technician.

In the emergency room, Dr. Stahlnecker examined Mr. Dohan and ordered an EKG. Both Dr. Stahlnecker and the resident assistant read the EKG, which confirmed that Mr. Dohan had in fact suffered a heart attack. Mr. Dohan also received an injection of Demerol from an emergency room nurse. After determining that Mr. Dohan had a coronary occlusion, Dr. Stahlnecker advised Appellee and her husband that Mr. Dohan be admitted to the coronary unit of Lankenau Hospital.

At approximately 8:00 a.m. the same Concordville Fire and Protective Association staff removed Mr. Dohan from Riddle's emergency room into an ambulance for transfer to Lankenau Hospital. This was done in full view of Riddle's emergency room staff and without objection. Furthermore, this transfer occurred even though the resident in the emergency room did not execute a signed approval as is required by Riddle's by-laws. While en route from Riddle to Lankenau Hospital, Mr. Dohan died.

As the result of Mr. Dohan's death, an action for wrongful death and survival was initiated against Riddle, Dr.

Stahlnecker and the Concordville Fire and Protective Association.[1] Prior to the trial, Dr. Stahlnecker and the Appellee entered into a settlement, but this was properly not revealed to the jury by the trial court. Trial commenced against Riddle and Dr. Stahlnecker as if he had not entered into the settlement. The jury returned a verdict for both defendants. The Appellee's motion for new trial was denied. An appeal was taken to the Superior Court, 313 Pa.Super. 279, 459 A.2d 1228 (Cercone, P.J., Brosky, J.; Wickersham, J. dissenting) which reversed the trial court and granted a new trial. We thereafter granted the petition for allocatur.

Before the Superior Court, the Appellee successfully argued that the trial court erred in its instructions to the jury regarding the duty of care owed by Riddle to Mr. Dohan. In particular, the Superior Court found error in the following instruction of the trial court:

> Now, even if you find that the attending physician remained in charge of the decedent David Dohan, Riddle Hospital, nevertheless, remained responsible for those services or acts which according to good medical practice it should have performed.
>
> Now, once a person is brought to a hospital emergency room and that person is accepted for care and treatment, the hospital must not act unreasonably in allowing a person to be removed from the premises. The law requires that such patient be kept at the hospital and not transferred or removed if it is foreseeable that his condition will be aggravated or his danger increased by such removal or transfer.
>
> Now, again I point out the contentions here, Riddle says that doesn't apply here because he never really became a patient in our emergency room. He just happened to be there and we had some services and we permitted Dr. Stahlnecker to use them.

1. By court order and stipulation of all parties entered on October 20, 1977, the action against Concordville Fire and Protective Association was discontinued.

R. 1015a–1016a.

The Superior Court held that even though the trial court charged on a correct point of law, the court obviated its own instruction by stating the Appellant's response to the points of law. Through the action of the trial court, the jury was permitted to draw the inference, "that it could disregard entirely the court's instructions with respect to the affirmative duties owed by the hospital to Mr. Dohan under the facts of this case." 313 Pa.Super. 289, 459 A.2d 1233 (1983). Thus, if the jury were to determine that Mr. Dohan was not an emergency room patient, then Riddle was not liable. Because the trial court committed no error in the jury instructions, we reverse.

■ It is well settled in our Commonwealth that when the propriety of the jury instruction of the trial court is at issue, those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies. *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759 (1972). *Vanic v. Ragni*, 435 Pa. 26, 254 A.2d 618 (1969).

Both the Appellee and the Superior Court placed great emphasis upon the trial court's refusal to hold that the decedent was Riddle's patient as a matter of law. This determination, however, was not critical in the disposition of this case.

■ The appropriate duty of care a hospital owes to a person brought into an emergency room is set forth in the Restatement of Torts 2d, § 323 (1965):

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Beginning with *DeJesus v. Liberty Mutual Ins. Co.*, 423 Pa. 198, 223 A.2d 849 (1966) and most recently in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), this Court has cited with approval this section. The distinguishing factor of this section from an action normally sounding in tort is that the tortfeasor failed to act reasonably in preventing harm from another source.[2]

 In essence, this is what the trial judge instructed the jury. If the jury found that the hospital acted unreasonably in allowing the decedent to be removed from the hospital, and it was foreseeable that such removal would aggravate or increase the danger of the existing physical condition, the hospital would be liable. Whether or not the decedent was a "patient" of Riddle is immaterial, for as the trial judge instructed the jury, "even if you find that the attending physician remained in charge of the decedent David Dohan, Riddle Hospital, nevertheless remained responsible for those services or acts which according to good medical practice it should have performed." R. 1015a. Accordingly, a jury could conclude that the decedent was not a "patient" of Riddle and still find Riddle liable for failing to act reasonably in permitting Dr. Stahlnecker to remove the decedent; or, the jury could have concluded that the decedent was a "patient" of Riddle, and the hospital did not act unreasonably. Although the issue of whether or not the decedent was technically a patient of Riddle was not critical to the disposition of this case, it does appear from a review of the record that it was a question of fact to be determined by the jury. As such, the trial judge instructed the jury as follows:

Now, with respect to relationship between hospital and persons brought to the emergency room. A person

2. Although it is not an issue in this appeal, it then becomes a jury question as to whether the injury would have resulted even if the tortfeasor had prevented the harm of the other source. *See, Hamil v. Bashline, Supra.*

brought to an emergency room is a patient. If emergency care is undertaken, liability is no different from that which exists with respect to a person admitted to the hospital.

Of course, the contention here, of course, is that physically he was in our emergency room, but he was not an emergency room patient of ours. He was Dr. Stahlnecker's patient. But you will have to determine this from the facts.

R. 977a.

Thus, at the conclusion of his instruction, when the trial judge restated the duty of care the hospital owed to Mr. Dohan, the court was merely reemphasizing the position and points of law which it previously discussed. Notwithstanding the disagreement of the parties as to the status of the decedent, the sole issue for the jury's consideration was whether the hospital acted reasonably once it had been determined that the hospital undertook to render services to the decedent. There is no dispute that the hospital rendered services to the decedent even though it was disputed as to the extent and manner of those services. Accordingly, the trial judge committed no error in the above quoted portions of his jury instruction or in refusing to charge as a matter of law that decedent was a patient of Riddle.

█ It is the function of our jury system to evaluate evidence adduced at trial to reach a determination. We will not superimpose our own beliefs for that of the jury so long as sufficient evidence has been offered to establish that reasonable persons may differ as to the verdict. *Grainy v. Campbell,* 269 Pa.Super. 225, 409 A.2d 860 (1979), rev'd on other grounds 493 Pa. 88, 425 A.2d 379 (1981).

Accordingly, there appearing no error of record, the judgment and order of the Superior Court is reversed, and the judgment of the Court of Common Pleas of Delaware County is reinstated.

LARSEN, J., filed a dissenting opinion in which NIX, C.J., and PAPADAKOS, J., joined.

LARSEN, Justice, dissenting.

I agree with the majority that the duty owed by a hospital to a person brought into an emergency room for care and assistance is defined by Restatement (Second) of Torts § 323 (1965). However, I disagree with the majority's conclusion that the trial court properly instructed the jury regarding this legal duty. Accordingly, I dissent.

The jury's determination of Riddle's liability was dependent upon their understanding of the legal duty owed by a hospital to a person brought to an emergency room for treatment. In his instructions to the jury the trial judge defined the hospital's legal duty as follows:

> Now, with respect to relationship between hospital and persons brought to the emergency room. A person brought to an emergency room is a patient. If emergency care is undertaken, liability is no different from that which exists with respect to a person admitted to the hospital.
>
> *Of course, the contention here, of course, is that physically he was in our emergency room, but he was not an emergency room patient of ours. He was Dr. Stahlnecker's patient. But you will have to determine this from the facts.*

N.T. October 31, 1977 at 1057 (emphasis added).

Upon the request of appellee's counsel that the court clarify the legal duty of the hospital according to the law of this Commonwealth the court charged:

> Now, once a person is brought to a hospital emergency room and that person is accepted for care and treatment, the hospital must not act unreasonably in allowing a person to be removed from the premises. The law requires that such patient be kept at the hospital and not transferred or removed if it is foreseeable that his condition will be aggravated or his danger increased by such removal or transfer.

*Now, again I point out the contentions here, Riddle says that doesn't apply here because he never really became a patient in our emergency room. He just happened to be there and we had some services and we permitted Dr. Stahlnecker to use them.*

N.T. October 31, 1977 at 1095–1096 (emphasis added).

The trial court failed to give the proper instructions regarding the duty of care owed by Riddle to the decedent. It is undisputable that once hospital personnel administered medication and rendered other services to decedent, Riddle had a duty, as a matter of law, to do those things necessary for decedent's care and protection. The only proper question for jury determination, therefore, was whether the hospital took all steps reasonable and necessary for the protection of the decedent. The trial court's gratuitous references to appellant's argument that decedent was not the hospital's "patient" were improper and had the inescapable effect of misdirecting and misleading the jury. Therefore, a new trial should be awarded and the Superior Court's order so directing should be affirmed.

NIX, C.J., and PAPADAKOS, J., join in this dissenting opinion.