555 A.2d 1352

John W. SHEEHAN and Beverly Sheehan, his wife

v.

CINCINNATI SHAPER COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 15, 1988.

Decided March 9, 1989.

580

582

Charles Kirshner, Pittsburgh, for appellant.

John J. Morgan, Pittsburgh, for appellees.

Before BROSKY, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

■ Cincinnati Shaper Company (Shaper) appeals from a judgment in a strict liability action in favor of John and Beverly Sheehan. We are asked to consider whether the rule precluding the introduction of industry standards in a strict liability action as pronounced in *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 537 A.2d 334 (1988) should be extended to preclude the introduction of OSHA regulations as well. We conclude that it should and thus affirm.

Employed as a machine operator for Pittsburgh Bridge and Iron Works (PBI), John Sheehan was responsible for cutting steel strips on a shear designed, manufactured and sold by Shaper. On September 29, 1982 while Sheehan was adjusting the position of the last piece of steel to be cut by putting his right hand around an awareness barrier, the shear malfunctioned, resulting in the amputation of several of Sheehan's fingers. The Sheehans brought a strict liability action against Shaper alleging that the shear was defective because it lacked adequate warnings and safety devices and because the shear malfunctioned by making repeat rotations while it was programmed to rotate only once. After trial by jury, a verdict award in the amount of $150,000 was returned against Shaper. Delay damages were added to the verdict. Post-trial motions were filed and denied. This appeal followed.

Shaper contends that the trial court committed error at trial as follows:

I. IN REFUSING TO PERMIT DEFENDANT TO PUT OSHA STANDARDS INTO EVIDENCE?

II. IN REFUSING TO PERMIT DEFENDANT TO INTRODUCE EVIDENCE THAT IT OFFERED TO PLAINTIFF'S EMPLOYER AN IMPROVED GUARD FOR THE SHEAR?

III. WHEN AFTER AFFIRMING DEFENDANT'S POINTS FOR CHARGE NUMBERED 4, 6 AND 13, IN FAILING TO INSTRUCT THE JURY ON THOSE POINTS, AND CONTINUING TO REFUSE EVEN AFTER SPECIFICALLY BEING REQUESTED TO DO SO?

IV. IN FAILING TO ADVISE THE JURY THAT IN CLOSING ARGUMENT, PLAINTIFF'S COUNSEL MISREPRESENTED THE EVIDENCE AND MADE A KNOWINGLY FALSE STATEMENT?

Principally, Shaper alleges that the trial court erred by refusing to permit Shaper to admit OSHA standards into evidence. The OSHA standards proffered allegedly would show that the buyer of the equipment, PBI, has a duty to provide safety mechanisms for the shear that injured Sheehan. Shaper contends that because providing a safety guard was PBI's responsibility, PBI's failure to buy the improved guard offered to them is relevant to the issue of causation and therefore should have been admitted. Although Shaper attempts to couch its argument in terms of causation, it fails to explain how OSHA standards are relevant to that issue. The essence of Shaper's argument is that Shaper acted reasonably by designing the shear without a safety guard since OSHA standards place the responsibility of providing a safety guard on the buyer/employer.

Liability in a strict liability action will attach where the manufacturer distributes a defective product and the existing defect is a substantial factor in causing injury to another. *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 605–606, 523 A.2d 379, 382 (1987). The reasonableness

of the manufacturer's conduct in choosing a particular design is not an issue. *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. at 617, 537 A.2d at 337. We conclude that the OSHA regulations proffered would introduce into a strict liability action the reasonableness of Shaper's failure to provide the new safety device for this machine, an issue irrelevant to whether liability attaches. Accordingly, the trial court did not err by sustaining Sheehan's objections to the introduction of this evidence.

This court addressed the question of whether industry customs and standards may be introduced to show that an employer, rather than the manufacturer, had the responsibility to provide necessary safety equipment in *Majdic, supra.* In that strict liability action, the plaintiff's hands were seriously injured when they came into contact with the point of operation of a power press machine. At trial, the court permitted the defendant to introduce evidence of industry standards and customs which directed the burden of supplying protective equipment for the machine upon the employer. Specifically, the proffered industry standards were federal safety standards which had been published by American National Standards Institute (ANSI). *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. at 629, 537 A.2d at 343 (Judge Wieand dissenting).

Relying on our supreme court's decision in *Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987), we held that the introduction of industry standards in a strict products liability case was impermissible because such evidence had the effect of introducing the reasonableness of the manufacturer's conduct into an action which focuses, for public policy reasons, upon the existence of a defect. We find the case before us is indistinguishable from *Majdic.* Shaper also sought to introduce government regulations which would have had the effect of shifting the jury's attention from the existence of a defect to the reasonableness of the manufacturer's [Shaper's] conduct. Accordingly, the trial court did not err in precluding the introduction of this evidence.

■ At issue II, Shaper alleges that evidence of Shaper's offer to provide an improved safety device, at cost to PBI, should have been admitted on three grounds. First, Shaper claims that the evidence should have been admitted to show causation since PBI's failure to install the new safety device was possibly the cause of Sheehan's accident. This evidence would also introduce into a strict liability action the reasonableness of Shapers's conduct and is therefore inadmissible. In addition, a manufacturer has a nondelegable duty to insure that his product is safe as of the time the product leaves its control. *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 559 n. 12, 391 A.2d 1020, 1027 n. 12 (1978). Accordingly, Shaper's offer to sell PBI a replacement guard after the shear left Shaper's control is irrelevant.

■ Secondly, Shaper alleges that evidence of his offer was admissible to show that PBI was warned of the defect in its own machine. Our review of the record discloses that Shaper did not offer to show that it warned PBI that their own machine was defective but rather offered to show that PBI was given the opportunity to buy a better, government recommended safety device. Evidence that Shaper offered PBI a new and improved safety device does not suffice to show that PBI knew that their own machine was defective. Moreover, Shaper would not be relieved of responsibility for the accident even if PBI was aware of the defect in the shear and had a duty to take corrective measures. As guarantor of its product, Shaper's duty to warn of any defects in the shear extended to the ultimate user, Sheehan. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 100, 337 A.2d 893, 902 (1975). The alleged notice to PBI does not serve to make Sheehan aware that the shear was defective.

■ Thirdly, Shaper alleges that evidence of the new safety device was admissible to impeach Dr. Kadunc's testimony regarding PBI's knowledge of a defect. Shaper contends that Dr. Kadunc denied that PBI had received information regarding the safety device on their shear. Our review of the record discloses that Dr. Kadunc's testi-

mony was that he was aware that PBI received correspondence regarding the new safety device but was unaware that PBI received any information notifying them that their own machine was defective. Accordingly, the proffered evidence, correspondence showing that a new guard was available, could not rebut Dr. Kadunc's assertion. Since Dr. Kadunc concedes that he was aware of Shaper's correspondence to PBI, there is no conflict.

At issue III, Shaper alleges that the trial court erred by failing to instruct the jury on abnormal and unintended uses. The points for charge at issue are as follows:

4. If an injury results from abnormal usage of the product, then there is no liability on the manufacturer.

6. A duty to warn exists only when those to whom the warning would go can reasonably be assumed to be ignorant of the fact which the warning is communicating.

13. Even where there is proof of a product in a defective condition which is unreasonably dangerous to a user, no liability ensues unless the injury occurred during an intended use of the product. A manufacturer has the right to expect that his product will be used in the normal and customary fashion.

▮▮▮▮▮ So long as the trial court properly covers the law on the issues raised in the case, he is given wide latitude in charging the jury. *Burch v. Sears, Roebuck & Co.*, 320 Pa.Super. 444, 455, 467 A.2d 615, 621 (1983). Neither point 4 nor 13 is reasonably raised by the issues in this case. The evidence produced at trial by both parties suggested that Sheehan used the shear in a standard manner. Our review of the record does not disclose evidence which would suggest that Sheehan used the shear abnormally or in a manner unintended by the manufacturer. Nor does Shaper make specific reference to such evidence in accordance with Pa.R.A.P. 2119(c). Also, with consideration of the jury charge as a whole, we find that point 6 concerning Sheehan's knowledge of a defect was adequately discussed in

the trial court's charge to the jury. Accordingly, the proffered points for charge were properly omitted from the charge of the jury. We find no prejudice in the trial court's decision to omit these points after having approved of them.

At issue IV, Shaper alleges that the trial court erred by not instructing the jury that Sheehan's counsel incorrectly asserted during closing argument that Sheehan's expert witness was "independent." Shaper admitted during a side bar conference with the court that no evidence was introduced regarding the independence of Sheehan's expert. The trial judge found that the independence of this witness was to be determined by the jury and therefore instructed the jury to consider whether the parties' witnesses had an interest in the suit, and if so, whether that interest affected their credibility. Accordingly, even if Sheehan's counsel's remarks were inappropriate, the error was cured by the charge given to the jury.

Judgment affirmed.