609 A.2d 1326

**Richard A. HAVASY, individually, and Richard A. Havasy and Judy Havasy, his wife, and Judy Havasy, in her own right, Appellants,**

**v.**

**Paul RESNICK, M.D., George H. Gilmore, M.D., and St. Margaret Memorial Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Filed May 8, 1992.

Reargument Denied July 14, 1992.

482

John F. Becker, Pittsburgh, for appellants.

Louis C. Long, Pittsburgh, for Resnick, appellee.

Kevin Harkins, Pittsburgh, for Gilmore, appellee.

Before WIEAND, CIRILLO and MONTGOMERY, JJ.

WIEAND, Judge:

In this medical malpractice action to recover for the allegedly improper treatment of a leg injury sustained by Richard Havasy, the jury returned a verdict in favor of the health care providers. Post-trial motions were denied, and judgment was entered on the jury's verdict. An appeal by Havasy and his wife followed. They allege numerous trial errors.[1]

On the morning of Monday, March 22, 1982, Richard Havasy sustained a serious injury to his left foot and ankle when a 600 pound metal cabinet fell from a forklift and struck his leg. The initial examination by Dr. Boland, an orthopedic resident at St. Margaret's Hospital, revealed a compound dislocation of the heel bone (talus protruding through a laceration along the medial aspect of the left foot) with no palpable pulse in the posterior tibial artery, diminished dorsalis pedis pulse and diminished plantar sensation (sense of touch on the sole of the foot). Because Havasy's condition merited the attention of a more experienced physician, Dr. George H. Gilmore, an orthopedic surgeon, was summoned from his nearby office and performed a closed reduction, i.e., the foot was manipulated to place the bone in proper anatomical position. Thereafter, the laceration was cleaned and sutured, a cast was applied and x-rays were obtained. Later on the same day the cast was bivalved (cut in half) to accommodate swelling of the leg.

---

1. The case was tried before the Honorable Marion Finkelhor. Following her retirement from the bench, the post-trial motions were heard by the Honorable Livingstone Johnson.

Over the ensuing five days Havasy experienced pain requiring narcotic relief and suffered a continued loss of plantar sensation, as well as a gradual diminishment of motor function, i.e., increasing difficulty in moving his toes. During this period the cast was periodically removed, the leg inspected and the cast reapplied. On Friday, March 26, Dr. Gilmore examined the leg and applied a solid (not bivalved) cast. He informed Havasy on that day that his care would be assumed by another physician while he, Gilmore, attended a medical convention.

Dr. Resnick, Gilmore's associate, saw Havasy for the first time on Monday, March 29. He ordered additional x-rays which disclosed a slight misalignment of the joint (subluxation). Resnick informed Havasy that surgery would be necessary to further reduce the joint. This surgery was performed by Resnick on March 31. During surgery Resnick observed that Havasy had developed an anterior compartment syndrome, i.e., muscle tissue in the front of Havasy's leg had died due to an impairment of blood flow to the muscle. After subsequent surgeries to remove necrotic (dead) muscle, Havasy was left with a permanent disability.

In their complaint, Havasy and his wife asserted that Dr. Gilmore had been negligent in failing to perform a surgical reduction on March 22 and that Gilmore, Resnick and employees of St. Margaret's Memorial Hospital should have diagnosed the compartment syndrome earlier so that all or some of the muscle and nerve damage could have been avoided. Following a lengthy trial, as we have observed, the jury rendered a verdict in favor of all defendants.

Appellants have included in their statement of questions involved a series of twenty-one (21) alleged trial errors which, in violation of Pa.R.A.P. 2116, counsel has spread over two and one-half pages of his brief. We have frequently observed that such a scattershot approach reduces the effectiveness of appellate advocacy. See: *Commonwealth v. Akers*, 392 Pa.Super. 170, 175, 572 A.2d 746, 748 (1990), quoting *United States v. Hart*, 693 F.2d 286 (3d

Cir.1982). We will address in this opinion those issues which appear to have arguable merit.

"In reviewing the denial of a motion for a new trial we decide whether there was an abuse of discretion or error of law committed by the trial court which might have affected the outcome of the case." *Cooper v. Burns,* 376 Pa.Super. 276, 281, 545 A.2d 935, 937 (1988), citing *Allison v. Snelling & Snelling, Inc.,* 425 Pa. 519, 229 A.2d 861 (1967); *Mohn v. Hahnemann Medical College and Hospital,* 357 Pa.Super. 173, 174, 515 A.2d 920, 921 (1986).

■ Although plaintiffs' experts did not attribute the compartment syndrome to tight casting of the injured leg, plaintiffs sought to introduce a statement allegedly made by Dr. Resnick to Mrs. Havasy that the compartment syndrome had been caused by tight casting. The trial court disallowed such testimony, reciting as its reason an agreement by counsel not to pursue the tight casting theory for Havasy's injuries. Our examination of the record discloses that the only agreement by plaintiffs was that the testimony of their expert witnesses would not include any discussion about tight casting. Nevertheless, we must affirm the trial court's evidentiary ruling if it was correct for any reason, even if it was a reason not discussed by the trial court. *Kline v. Blue Shield of Pa.,* 383 Pa.Super. 347, 351–352, 556 A.2d 1365, 1368 (1989); *Jones v. P.M.A. Ins. Co.,* 343 Pa.Super. 411, 413 n. 1, 495 A.2d 203, 204 n. 1 (1985); *Butler v. DeLuca,* 329 Pa.Super. 383, 478 A.2d 840 (1984). Here, we conclude that the extrajudicial opinion of Dr. Resnick was properly excluded as hearsay.

Dr. Resnick was available to testify at trial, but he was not called to testify by plaintiffs. Instead, they sought to have Mrs. Havasy testify to an extrajudicial statement of medical opinion allegedly made by Dr. Resnick during the course of treating the husband-plaintiff. This statement was clearly hearsay.

The statement was not admissible as an exception to the hearsay exclusion. It was neither an admission nor a

declaration against interest. It was, rather, a self-serving attempt to fix responsibility for the compartment syndrome upon Dr. Gilmore, who had been responsible for treating Havasy before Resnick's entry upon the scene.

■ Moreover, even a statement against interest can be received only when the declarant is unavailable. Packel and Poulin, Pennsylvania Evidence § 804.3. See also: *Movie Distributors Liquidating Trust v. Reliance Ins. Co.*, 407 Pa.Super. 588, 593, 595 A.2d 1302, 1304–1305 (1991), citing *Heddings v. Steele*, 514 Pa. 569, 573, 526 A.2d 349, 351–352 (1987) and *Commonwealth v. Colon*, 461 Pa. 577, 582, 337 A.2d 554, 557 (1975). Hence, even if Resnick's statement could somehow be construed as a declaration against interest, it would not have been admissible in this case.

■ In general, an out of court admission by a party may be used against him at trial as an exception to the hearsay rule. *Perciavalle v. Smith*, 434 Pa. 86, 252 A.2d 702 (1969); *Finnerty v. Darby*, 391 Pa. 300, 138 A.2d 117 (1958); *Schweinberg v. Irwin*, 379 Pa. 360, 109 A.2d 181 (1954); *Mecca v. Lukasik*, 366 Pa.Super. 149, 530 A.2d 1334 (1987); *Spotts v. Reidell*, 345 Pa.Super. 37, 497 A.2d 630 (1985). This exception, however, will not render an extrajudicial statement admissible where the admission of a party would unduly prejudice another party against whom the statement is inadmissible. *Commonwealth v. Holloway*, 429 Pa. 344, 240 A.2d 532 (1968); *McShain v. Indemnity Ins. Co. of N.A.*, 338 Pa. 113, 12 A.2d 59 (1940); *Durkin v. Equine Clinics, Inc.*, 376 Pa.Super. 557, 546 A.2d 665 (1988), *allocatur denied*, 524 Pa. 608, 569 A.2d 1367 (1989); *Adams v. Mackleer*, 239 Pa.Super. 244, 361 A.2d 439 (1976). In *McShain v. Indemnity Ins. Co. of N.A.*, *supra*, the Supreme Court stated that:

> The situation is not unique where, as in the present case, a declaration by a party would be admissible against him but not against others—co-defendants with him or with interests similar to his own,—but where, if the declaration were received as evidence against the person making it, the necessary result would be to prejudice such others;

under these circumstances there is abundant authority to the effect that the declaration should be excluded entirely so as to protect those whom its admission would harm, even though the party offering it is thus precluded from the exercise of a right he would have had if the proceeding were against the declarant alone: *Goodno v. Hotchkiss,* 237 Fed. 686, 696; *Windham v. Howell,* 78 S.C. 187, 194, 195, 59 S.E. 852, 854, 855; *Continental Insurance Co. v. Delpeuch,* 82 Pa. 225, 233; *Lacock v. Commonwealth,* 99 Pa. 207. See also *Dickinson College v. Church,* 1 W. & S. 462, 465.

*Id.* 338 Pa. at 119, 12 A.2d at 62. This principle was recently applied in *Durkin v. Equine Clinics, Inc., supra.* There, in a malpractice action against a veterinarian and a clinic, a panel of the Superior Court held that an out of court admission by the defendant-veterinarian that plaintiff's horse had died after the administration of certain drugs was not admissible at trial. The *Durkin* Court stated as follows:

[A]lthough the statements made by Dr. DeLeo may be admissible against him as party admissions, they cannot be held admissible against Equine Classics, also a party in this action. There is no evidence to indicate that Dr. DeLeo was authorized to make such an admission for Equine Classics. *See Murray v. Siegal,* 413 Pa. 23, 31, 195 A.2d 790, 794 (1963); *Yubas v. Makransky,* 300 Pa. 507, 511, 150 A. 900, 902 (1930). To attempt to caution the jury to use those statements only against DeLeo, and not consider them when determining the liability of Equine Classics would be to attempt the impossible. The liability of both are inextricably intertwined. For this reason, we would hold that the statements allegedly made by Dr. DeLeo would be too prejudicial to Equine Classics to be allowed into the case.

*Id.* 376 Pa.Super. at 566, 546 A.2d at 669.

Here, the plaintiffs sought to use Dr. Resnick's extrajudicial statement that a tight cast had caused Havasy's compartment syndrome to impugn the actions taken by

Dr. Gilmore and the hospital staff which had applied the various casts. Dr. Resnick was not authorized to make admissions on behalf of Dr. Gilmore or St. Margaret's Hospital; and his statement, if heard by the jury, would have served to prejudice co-defendants' case while shedding no light on the appropriateness of the treatment rendered by Dr. Resnick after the compartment syndrome had already developed. For these reasons, it was not error to exclude from Mrs. Havasy's testimony the out-of-court statement allegedly made by Dr. Resnick regarding a tight cast.

■ The trial court also refused to allow plaintiffs to raise the issue of a tight cast in the cross-examination of Dr. Resnick's medical expert, Dr. Dana C. Mears.[2] This was not an abuse of discretion. The general rule is that cross-examination must be limited to the subject matter of the direct examination and matters affecting credibility of the witness. *Kline v. Kachmar*, 360 Pa. 396, 61 A.2d 825 (1948); *Conley v. Mervis*, 324 Pa. 577, 188 A. 350 (1936); *Pascone v. Thomas Jefferson University*, 357 Pa.Super. 524, 516 A.2d 384 (1986), *appeal dismissed*, 517 Pa. 320, 536 A.2d 338 (1988); *Commonwealth v. Lobel*, 294 Pa.Super. 550, 440 A.2d 602 (1982). The reason for this rule, as stated

---

**2.** Defendants did not waive their objection to this portion of Dr. Mears' deposition.

In no case is the general inadmissibility of evidence waived. Rule 4020 permits a deposition to be used at the trial "so far as admissible under the rules of evidence." There may be a partial waiver of some of the many grounds of inadmissibility within the narrow equitable limits stated in subdivision (b) of Rule 4016, which is incorporated by reference in Rule 4020(c). But, generally speaking, the admissibility of evidence will be ruled upon at the trial by the trial judge de novo. It will be the exception, and not the rule, that questions of admissibility will have been adjudicated by waiver during the course of the taking of the depositions.

Rule 4016 is designed to prevent the interposition of technical and formal objections to the depositions at the trial, as a means of preventing their contents being submitted to the jury on the merits. It does not deal with the questions of the admissibility of the contents themselves. This is normally a problem for the trial judge to decide, under the laws of evidence.

Goodrich–Amram 2d, § 4016:4.

by the Supreme Court in *Conley v. Mervis, supra,* is as follows:

> The underlying reason for confining the scope of cross-examination is to promote order and method in the presentation of a case. Each party must have an opportunity to present his side of the case without the introduction of matters unrelated to his case in chief and not touched upon in his evidence. The Pennsylvania rule makes the issues as clear as possible to the jury by reducing to a minimum the possibility of the intermingling of matters purely defensive in character with the facts of a plaintiff's case. The issues are clarified and confusion eliminated to the greatest possible extent by the separation of their respective contentions and the testimony produced in support thereof.

*Id.* 324 Pa. at 581, 188 A. at 352–353. Dr. Mears had been called to testify and had testified on direct examination as to the care rendered by Dr. Resnick. His direct testimony did not include any discussion regarding the care rendered during the first week after the accident, during which the several casts had been applied. Hence cross-examination regarding tight casting exceeded the scope of the testimony on direct and was properly excluded from Dr. Mears' video-taped deposition.[3]

Finally, a careful examination of the record reveals a complete absence of any evidence that Havasy's cast, in fact, had been too tight. Neither Havasy nor the medical experts who testified on his behalf suggested that the casts applied during the first week of hospitalization had been too tight. Similarly, his experts made no attempt to fix the cause of Havasy's compartment syndrome as tight casting. Therefore, the theory of tight casting now advanced by appellant is not viable. The trial court did not err when it sustained objections to general, conclusory statements that tight casting may cause compartment syndrome.

---

3. Plaintiffs' additional contention that it was error to exclude cross-examination of Dr. Mears regarding the fact that he had taught Dr. Resnick and two of the hospital residents is meritless.

Pa.R.C.P. 4003.5(c) provides that expert opinion testimony should be limited as follows:

(c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings ... his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto.

The Rule's Explanatory Note states that "where the full scope of the expert's testimony is presented in ... the separate report ... this will fix the permissible limits of his testimony at trial." See: *Hannis v. Ashland State General Hospital*, 123 Pa.Commw. 390, 394, 554 A.2d 574, 576 (1989), *allocatur denied*, 524 Pa. 632, 574 A.2d 73 (1989). This limitation upon the scope of an expert's testimony serves to insure that an expert's report will be sufficiently comprehensive and detailed to inform an opposing party of the expert's testimony at trial. Cf. *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas*, 348 Pa.Super. 285, 290, 502 A.2d 210, 212 (1985); *Starr v. Allegheny General Hospital*, 305 Pa.Super. 215, 229, 451 A.2d 499, 505 (1982); *Royster v. McGowan Ford, Inc.*, 294 Pa.Super. 160, 166, 439 A.2d 799, 802 (1982); *Pickarksi v. Club Overlook Estates, Inc.*, 281 Pa.Super. 162, 421 A.2d 1198 (1980).

In the instant case, the pre-trial report of Dr. Huesmann did not identify any negligent acts on the part of Dr. Resnick. Huesmann listed instances of substandard care which had allegedly been rendered by "the attending physician." The context of the report focused exclusively on the care rendered during the first week post-accident. Therefore, the trial court concluded that "attending physician" referred to Dr. Gilmore, for Dr. Resnick was not involved in Havasy's care during the first week after the accident. The report, therefore, did not serve to alert the parties that Dr. Huesmann intended to attribute to Dr. Resnick any alleged inadequacies in monitoring Havasy's care. Consequently, Huesmann's testimony attempting to impugn Dr. Resnick's

actions after he assumed responsibility for Havasy's care was properly excluded by the trial court.

█ The trial court also did not err when it refused to allow Mrs. Havasy to read aloud from her depositions and from notes which she had made for the purpose of rehabilitating her testimony following cross-examination. Generally, "because [prior consistent] statements are hearsay their use as a means to rehabilitate the credibility of an impeached witness' testimony is severely limited." *Commonwealth v. Hutchinson*, 521 Pa. 482, 487, 556 A.2d 370, 372 (1989), citing *Commonwealth v. Gaddy*, 468 Pa. 303, 317, 362 A.2d 217, 223 (1976). "Evidence of such statements is 'admissible only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not been recently fabricated.'" *Commonwealth v. Gaddy, supra* at 316, 362 A.2d at 223, quoting *Commonwealth v. Wilson*, 394 Pa. 588, 602–603, 148 A.2d 234, 242 (1959), *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). Whether to admit a prior consistent statement for the purpose of rehabilitation is to be decided by the trial court in the exercise of its sound discretion in light of the character and degree of impeachment. *Commonwealth v. Jubilee*, 403 Pa.Super. 589, 598, 589 A.2d 1112, 1116 (1991), quoting *Commonwealth v. Gore*, 262 Pa.Super. 540, 550, 396 A.2d 1302, 1307 (1978).

Instantly, Mrs. Havasy had been impeached by her own admission that she failed to include certain information in answer to a deposition question. She admitted that her deposition testimony did not include a statement allegedly made by Dr. Resnick that nerves and tendons had been trapped in the joint. The content of her deposition answer in all other respects was not in issue. As such, her cross-examination did not open the door to a reading of the entire deposition answer which contained additional hearsay statements by Dr. Resnick. Appellants' counsel had also established during re-direct examination of Mrs. Havasy that her personal notes did include reference to entrapped nerves and tendons. As such, a verbatim reading from the notes

was not necessary for rehabilitation and would have introduced inadmissible hearsay. The trial court did not err in refusing to permit the introduction of inadmissible hearsay by Dr. Resnick in the guise of prior consistent statements by the wife-plaintiff.

■ Appellants next contend that the trial court erred by permitting Dr. Resnick and Dr. Gilmore to express opinions regarding the cause of Havasy's compartment syndrome and the wisdom of their treatment decisions. Dr. Resnick described in detail his observations during surgery and correlated these observations with the mechanical force of injury which would necessarily have produced the physical conditions he observed. He stated that the muscle tissue removed from Havasy's leg had had gross visible signs of internal bleeding consistent with traumatic injury to the muscle. He also stated that these observations were consistent with the pathology report on the muscle removed during surgery. Finally, Resnick distinguished between the hemorrhagic injury he had observed in Havasy and the compression type compartment syndrome discussed by plaintiffs' experts. Dr. Gilmore also testified to his personal observations of Havasy's condition and explained the risks and benefits which he had considered in deciding how best to treat Havasy's injury. He explained that upon first observing Havasy's injury he noted an apparent compromise of arterial blood flow which threatened the viability of the foot and necessitated immediate reduction of the joint. Dr. Gilmore further stated that he had opted to perform a closed reduction in order to restore arterial blood flow and avoid the risk of increased swelling, infection and skin loss on the medial aspect of the foot. Appellants argue that this testimony was improper because Resnick and Gilmore had not submitted a pre-trial report as required by a local rule of court. There is no merit in this argument.

■ A pre-trial report by a non-party expert serves to inform the opposing side of the identity of a party's experts and the conclusions of the experts in order to prevent unfair surprise and prejudice at trial. *Sindler v. Goldman,* 309

Pa.Super. 7, 12, 454 A.2d 1054, 1056 (1982). Cf. *Nowosiel-ski v. Kryzosiak,* 280 Pa.Super. 243, 421 A.2d 703 (1980). However, a physician who is also a defendant may testify as a fact witness in his own behalf without the prior filing of an expert's report. *Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103 (1987). See: 10 Goodrich–Amram 2d, § 4003.5:2 (1979); Explanatory Note to Pa.R.C.P. 4003.5. Fact testimony may include opinions or inferences so long as those opinions are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony. *McKee by McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260 (1988), *allocatur denied,* 522 Pa. 604, 562 A.2d 824 (1989); *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa.Super. 218, 225, 496 A.2d 762, 766 (1985); *Lewis v. Mellor,* 259 Pa.Super. 509, 393 A.2d 941 (1978). See also: *Meth v. United Ben. Life Ins. Co.,* 198 F.2d 446 (3d Cir.1952) (opinion of attending physician as to cause of death not objectionable as a conclusion or an opinion rather than a fact).

We conclude that the testimony offered by Dr. Gilmore and Dr. Resnick was properly received. Not only was this testimony primarily factual, but it was known to plaintiffs' counsel, who had been informed of the substance of the testimony to be given by these witnesses via their pre-trial depositions.

Appellants' next contention is that the trial court erred when it permitted defendants' experts, Dr. Wissenger and Dr. Mears, to express the opinion that the muscle injury in Havasy's lower leg had been caused by the initial accident. Appellants argue that this opinion was inconsistent with the undisputed fact that the only gross anatomical injury observed in the emergency room, by Havasy and attending medical personnel, had been the compound ankle dislocation. Appellants' reasoning is flawed.

In the first place, testimony is not rendered inadmissible merely because it contradicts other evidence. A jury is entitled to hear all the relevant evidence that is not

subject to exclusion as a matter of law. *Cohen v. Albert Einstein Medical Center*, 405 Pa.Super. 392, 402, 592 A.2d 720, 725 (1991); *Christy v. Darr*, 78 Pa.Commw. 354, 358, 467 A.2d 1362, 1364 (1983). See also: *In re Gastons Estate*, 361 Pa. 105, 112, 62 A.2d 904, 908 (1949). The fact that testimony may be contradicted by other testimony goes to its credibility, not its admissibility.

In the instant case, moreover, the fact that immediately following the accident Havasy's only visible *injury* had been to his ankle did not necessarily establish that only the ankle had been injured by the falling cabinet. The observations of the defendant-physicians that there had been no apparent arterial flow to the foot, that ligaments had been torn, that tendon had been stretched and pulled from muscle, that the tibial nerve had been stretched, when considered in conjunction with Havasy's description of the accident and basic Newtonian principles of motion and force, provided a sturdy foundation for the opinion of defendants' expert witnesses. It was not confusing, inconsistent or conjecture to opine that the full extent of the injury had not been visible or even ascertainable immediately following the accident.

Defendants' experts testified that the muscles of Havasy's lower leg had been irreversibly damaged by the fall of the cabinet. This testimony tended to rebut the evidence produced by the plaintiff-appellants that damage to the leg could have been avoided or lessened by earlier diagnosis and treatment. It can readily be seen, therefore, that the testimony of the defense experts was relevant and admissible to contradict the theory advanced by the plaintiff-appellants. The credibility and weight of the conflicting testimony was for the jury to determine. *Melzer v. Witsberger*, 505 Pa. 462, 476 n. 9, 480 A.2d 991, 998 n. 9 (1984); *Smith v. Brooks*, 394 Pa.Super. 327, 344, 575 A.2d 926, 935 (1990); *Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich Inc.*, 344 Pa.Super. 367, 378–379, 496 A.2d 840, 846 (1985); *Hartman v. Com. Bd. of Optometrical Examiners*, 71 Pa.Commw. 110, 454 A.2d 1150 (1983).

■ During examination of plaintiffs' expert, Dr. Josephs, regarding his qualifications as an expert, defense counsel questioned the witness as to whether he had ever testified in workmen's compensation cases. Appellant contends that a new trial should be granted because this question suggested that plaintiffs had filed a workmen's compensation claim. Whether a new trial should be granted for improper remarks of counsel is primarily a matter of the trial court's sound discretion. *Stevenson v. Pennsylvania Sports and Enterprises*, 372 Pa. 157, 93 A.2d 236 (1952); *Narciso v. Mauch Chunk Twp.*, 369 Pa. 549, 87 A.2d 233 (1952); *Boscia v. Massaro*, 365 Pa.Super. 271, 529 A.2d 504 (1987), *allocatur denied*, 517 Pa. 620, 538 A.2d 874 (1988). It is not an abuse of discretion to refuse a new trial where there was no prejudice resulting from improper remarks. See: *Smith v. Barker*, 368 Pa.Super. 472, 534 A.2d 533 (1987), *allocatur denied*, 520 Pa. 577, 549 A.2d 137 (1988); *Naccarati v. Garrett*, 351 Pa.Super. 437, 506 A.2d 428 (1986).

As a general rule, it is error for the jury to be informed that the plaintiff has been compensated by a collateral source, such as workmen's compensation. *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 188 A.2d 259 (1963); *Lengle v. North Lebanon Twp.*, 274 Pa. 51, 117 A. 403 (1922). However, the Pennsylvania courts have held that the mere mention of a third party source, such as insurance, does not automatically necessitate a new trial. *Tuttle v. Suznevich*, 394 Pa. 614, 621, 149 A.2d 888, 891 (1958); *Pushnik v. Winky's Drive–In Restaurants, Inc.*, 242 Pa.Super. 323, 335, 363 A.2d 1291, 1297 (1976); *Knapp v. Willys–Ardmore, Inc.*, 174 Pa.Super. 90, 97, 100 A.2d 105, 109 (1953).

Instantly the reference to workmen's compensation occurred during the exchange between defense counsel and Dr. Josephs as follows:

Q Have you ever testified by videotape deposition?

A In a malpractice case, video deposition, no.

Q Never?

A That's correct.

Q How about any other type of health care case by videotape deposition?

A Health care case, surely.

Q That would include worker's compensation cases, any other kinds of cases?

A By definition an orthopedist is going to be coming in contact with people with problems and our opinions are always going to be asked.

Defense counsel's specific reference to workmen's compensation cases was unnecessary, but the question and answer did not prejudice appellant's case in any way. Counsel did not disclose by his question and the jury could not reasonably infer from the question or answer that plaintiff had sought or received workmen's compensation. The isolated reference to workmen's compensation was inconsequential and does not constitute grounds for awarding a new trial.

 Finally, appellants complain of alleged errors in the trial court's jury instructions.

In reviewing a trial court's instructions to the jury, it is well settled that we must view the court's charge in its entirety to determine whether any prejudicial error has been committed. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). "A trial court is not required to accept the precise language of points for charge submitted by counsel so long as the issues are defined accurately and the applicable law is correctly reviewed." *Spearing v. Starcher*, 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987). See also: *Geyer v. Steinbronn*, 351 Pa.Super. 536, 554, 506 A.2d 901, 911 (1986); *Fish v. Gosnell*, 316 Pa.Super. 565, 580, 463 A.2d 1042, 1050 (1983).

*Cooper v. Burns, supra* 376 Pa.Super. at 283, 545 A.2d at 938. The primary duty of the trial judge is to clarify the issues and apprise the jury of the legal principles needed to decide the case. *Vaughn v. Philadelphia Transp. Co.*, 417 Pa. 464, 468, 209 A.2d 279, 282 (1965); *Graham v. Sky Haven Coal, Inc.*, 386 Pa.Super. 598, 609, 563 A.2d 891, 896 (1989), *allocatur granted*, 525 Pa. 603, 575 A.2d 568 (1990).

The trial court has wide latitude in formulating its charge so long as it clearly and adequately covers the law pertaining to the issues raised by the evidence. *Kimmel v. Yellow Cab Co.*, 414 Pa. 559, 201 A.2d 417 (1964); *Sheehan v. Cincinnati Shaper Co.*, 382 Pa.Super. 579, 586, 555 A.2d 1352, 1356 (1989), *allocatur denied*, 523 Pa. 633, 564 A.2d 1261 (1989); *Jackson v. Spagnola*, 349 Pa.Super. 471, 480–481, 503 A.2d 944, 949 (1986), *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1987). We will not reverse merely because a trial court restated a point of law several times. *White by Stevens v. SEPTA*, 359 Pa.Super. 123, 129, 518 A.2d 810, 813 (1986), *allocatur denied*, 515 Pa. 609, 529 A.2d 1082 (1987).

Instantly, our careful reading of the court's lengthy charge discloses thorough and accurate instructions. Any repetition was the result of the court's heroic effort to satisfy counsels' concerns and avoid unnecessary argument.

The trial court's repeated statements that plaintiffs bore the burden of proof did not prejudice the plaintiffs or overemphasize their evidentiary burden. The charge to the jury did not contain veiled hints or shadowy direction toward a favored verdict. Similarly, the trial court did not imply that it had any opinion regarding the merits of the case.

■ The trial court's isolated use of the phrase "major factor" rather than "substantial factor" in defining causation is not a basis for awarding a new trial. An isolated inaccuracy in an otherwise accurate charge is not a proper basis for reversal. *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984); *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759 (1972); *White by Stevens v. SEPTA, supra* 359 Pa.Super. at 131, 518 A.2d at 814. A review of the charge as a whole reveals that the jury was accurately and fully instructed on the issue of causation. There was no error.

The trial court also did not err when it instructed the jury that plaintiffs were entitled to recover if they proved by a

preponderance of the evidence that the negligence of a defendant increased the risk of permanent injury. See: *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). The court's instruction was delivered twice in clear language. Hence, appellants' contention that the instruction on increased risk of harm was insufficient or somehow "buried in the charge" is meritless.

■ The trial court did not err when it instructed the jury that a physician does not guarantee a cure and that negligence should not be presumed from the occurrence of an unfortunate result. These are accurate statements of the law and do not contradict or confuse the instruction on increased risk of harm. See: *O'Rourke v. Rao,* 411 Pa.Super. 609, 602 A.2d 362 (1992), citing *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974). See also: *Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968).

■ The trial court did not err when it instructed the jury that if a physician exercises the skill, knowledge and care customarily exercised in his profession, he is not liable for a mere mistake of judgment. The court's instruction was taken from and delivered consistently with the opinion of the Supreme Court in *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963), where the Court said:

> ...; (g) a physician is not liable for an error of judgment ...; (h) if a physician employs the required judgment and care in arriving at his diagnosis, the mere fact that he erred in his diagnosis will not render him liable, even though his treatment is not proper for the condition that actually exists.

*Id.,* 412 Pa. at 100, 194 A.2d at 171 (footnotes and citations omitted). See also: *Hodgson v. Bigelow,* 335 Pa. 497, 504–505, 7 A.2d 338, 346–347 (1939); *Ward v. Garvin,* 328 Pa. 395, 195 A. 885 (1938); *Duckworth v. Bennett,* 320 Pa. 47, 181 A. 558 (1935); *English v. Free,* 205 Pa. 624, 55 A. 777 (1903); *Richards v. Willard,* 176 Pa. 181, 35 A. 114 (1896); *Dinardo v. Carneval,* 297 Pa.Super. 484, 489, 444 A.2d 135,

137–138 (1982); *Remley v. Plummer,* 79 Pa.Super. 117, 122 (1922).

This is not to say that a physician cannot be liable for a mistake of judgment or misdiagnosis. He is clearly liable if his mistake reflects a failure to follow proper practice and thereby violates the standard of care required of physicians. In the instant case, however, the instruction was appropriate because of expert testimony that compartment syndrome is often difficult to diagnose early and that the signs and symptoms apparent in Havasy's situation most likely were obscured by symptoms associated with the original injury. The trial court's instruction properly directed the jury to base its verdict on whether a physician had failed to follow proper medical procedure and not to infer a breach of the standard of care merely from Havasy's unfortunate result.

■■■ Appellants also complain that it was error for the trial court to instruct the jury on the "two schools of thought doctrine." The court charged as follows:

A physician may rightfully choose to practice his profession in accordance with schools of thought or procedures which differ in its concepts and procedures from another school of thought, even though the school of thought that the physician follows is a minority one, he will not be deemed to be negligent or practicing improperly so long as it is reputable and respected by reasonable medical standards, medical experts.

After careful consideration of the evidence, we conclude that the instruction was proper.

The two schools of thought doctrine is based on the premise that "a lay jury is not to be put in a position of choosing one respected body of medical opinion over another, when each has a reasonable following among the members of the medical community." *D'Angelis v. Zakuto,* 383 Pa.Super. 65, 69, 556 A.2d 431, 432 (1989), quoting *Trent v. Trotman,* 352 Pa.Super. 490, 496, 508 A.2d 580, 584 (1986). See also: *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980); *Tobash v. Jones,* 419 Pa. 205, 217, 213 A.2d

588, 593 (1965). The rule was first stated in *Remley v. Plummer, supra,* where the court entered judgment n.o.v. in favor of a defendant. The issue in *Remley* had been whether it was negligence to administer, during minor hand surgery, general anesthesia instead of a local anesthetic. The court reasoned as follows:

> The question actually passed upon by the jury was not whether the defendants, in their handling of the case, had been guilty of negligence in not following a well-recognized and established mode of treatment, but rather, which of two methods, both having their respective advocates and followers of respectable authority, was the safer and better from a surgical standpoint. In other words, in the face of conflicting reliable expert evidence as to what was the proper course to be pursued by the surgeon in charge of the case, twelve laymen, with no knowledge of medicine and surgery were called upon to decide a disputed scientific medical and surgical question upon which eleven physicians and surgeons of standing and experience could not agree, and as to which there is a wide divergence of competent authority, and were permitted to mulct the defendants in damages for following a course of conduct which by far the greater number of the expert witnesses testifying said was in accordance with that indicated by the best modern surgical practice.

*Id.* at 121. The court concluded:

> The testimony clearly showed a difference of medical opinion, expressed by physicians and surgeons of unquestioned standing and reputation, and the defendants were not negligent for having adopted the view held by the majority of their brethren who testified. If it was an error at all, it was one of judgment.

The rule was later applied by the Pennsylvania Supreme Court in *Duckworth v. Bennett,* 320 Pa. 47, 181 A. 558 (1935). There, the court affirmed the judgment entered on a directed verdict for defendants. The court held that plaintiff could not prevail in his assertion that defendant had failed to diagnose correctly a leg injury because the

credible expert testimony on each side was in irreconcilable conflict. The court reasoned that "where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of his professional brethren...." *Id.*, 320 Pa. at 51, 181 A. at 559.

Shortly after the doctrine had been adopted, the Supreme Court limited its application in *Hodgson v. Bigelow, supra.* There, the Supreme Court affirmed the award of a new trial on grounds that the jury instruction on different schools of thought had been inappropriate because the experts had agreed on the proper course of treatment. The court held that where medical experts in a case agree as to the recognized and established proper treatment for a particular type of injury but there is a dispute as to whether the plaintiff had that type of injury, the latter question is one of fact for the jury.

This limitation was recognized even at the time the doctrine was first stated in *Remley v. Plummer, supra,* where the Superior Court, in dictum, stated:

[I]f there is a reasonably general agreement as to what is the proper medical treatment for a disease or the proper surgical treatment for an injury and there is a dispute as to whether the physician or surgeon in charge of the case used the method or means thus generally prescribed a question of fact is presented which is for a jury to determine. Or if the symptoms of a disease or the effects of an injury are so well known that a reasonably competent and skillful physician or surgeon ought to be able to diagnose the disease or injury, his negligence in failing to do so is likewise a matter of fact on which a jury of laymen may pass judgment.

*Id.* at 122. See also: *D'Angelis v. Zakuto, supra; Morganstein v. House,* 377 Pa.Super. 512, 547 A.2d 1180 (1988), *appeal dismissed,* 525 Pa. 498, 581 A.2d 1377 (1990).

In the instant case, the instruction on two schools of thought pertained to the issue of whether the initial closed reduction by Dr. Gilmore and the early treatment of the

injury by the hospital staff was appropriate treatment. The expert testimony on this issue revealed agreement as to the basic nature of the injury and the need to promptly reposition the joint. The testimony diverged over whether repositioning should have been immediate and non-surgical, as Dr. Gilmore elected to do, or whether it should have been performed in the operating room after x-rays had been obtained. Each side's experts supported their opinions with thorough explanations as to the pros and cons associated with the approach which they advocated. Each side acknowledged that either approach entailed risks. The jury could have concluded that the expert testimony on each side was equally credible and of equal weight. Therefore, the court's instruction was appropriate. The trial court's instruction on different schools of thought provided the jury with essential guidance in the event that it could not find that the experts on one side or the other had established a single standard of care.

The doctrine of different schools of thought cannot be limited in its application to only those instances where the experts on both sides agree that different treatment or diagnostic approaches are widely recognized. As a practical matter, two schools of thought exist whenever several conflicting opinions regarding the proper course of treatment are found by a jury to be equally credible and of equal weight. In such cases it is appropriate that the jury be instructed, as it was instantly, that it must critically evaluate conflicting expert testimony, but that a physician will not be deemed negligent if he follows procedures from a school of thought which is reputable and respected by members of the medical profession.

Because we have determined that the trial was conducted without error, the judgment must be, as it is,

AFFIRMED.