Amy BRODSKY, Administratrix of the Estate of Max BRODSKY, Deceased, and Amy Brodsky, Individually and as Parent and Natural Guardian of Amanda Autumn Brodsky, Appellant,

v.

MILE HIGH EQUIPMENT COMPANY, d/b/a Ice–O–Matic, Inc.; Copeland Corporation; Emerson Electric Company.

Amy Brodsky, Administratrix of the Estate of Max Brodsky Deceased, Individually and as Parent and Natural Guardian of Amanda Autumn Brodsky, Appellant,

v.

Mile High Equipment Company; d/b/a Ice–O–Matic, Inc.; Copeland Corporation; Emerson Electric Company.

Nos. 02–1844, 02–1930.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 10, 2003.

Decided April 18, 2003.

Before: RENDELL, AMBRO and MAGILL,* Circuit Judges.

OPINION

AMBRO, Circuit Judge.

This is a product liability case involving an ice machine that electrocuted appellant Amy Brodsky's husband, Max Brodsky. After a jury found in favor of the defendants, Amy Brodsky – individually, as administratrix of her husband's estate and as guardian of her daughter (in all capacities, "Brodsky")—sought a new trial, arguing that the District Court had erroneously admitted evidence relating to industry standards and Occupational Safety and Health Administration ("OSHA") citations and fines issued as a result of the accident.

---

* Honorable Frank J. Magill, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

The District Court denied both the motion and a subsequent motion for reconsideration, and this appeal followed. We affirm both denials.

## 1. Facts and Procedural History

The ice machine that caused Max Brodsky's death was purchased by Quality Beverage from Mile High Equipment Company ("Mile High"), and installed in a restaurant. Because the machine did not properly manufacture ice, Quality Beverage replaced it and took the malfunctioning machine to its warehouse. Five months later, Max Brodsky was instructed to assist with repairs to the machine and, upon beginning the repairs, was electrocuted. The cord (or cords) and the plug that connected the machine to the electrical source mysteriously disappeared almost immediately after the accident. OSHA investigated the accident, and assessed penalties against Quality Beverage for its failure properly to train Max Brodsky's co-workers in electrical matters.

Brodsky brought an action in the Eastern District of Pennsylvania as the administratrix of Max Brodsky's estate and on behalf of herself and her daughter against, *inter alia*, Mile High. The complaint principally alleged a strict liability claim stemming from a design defect in the ice machine. Brodsky claimed the machine was defectively designed because it was not equipped with a cord and a plug to connect it to a power source and because a temperature-control device should have prevented (but did not prevent) the problem that Max Brodsky was attempting to correct at the time of his death. Mile High contended that the design of the machine was not defective, and, in the event that it was defective, Quality Beverage's intervening negligence was a superseding cause of Max Brodsky's death.

After a five-day trial held in July 2001, the jury returned a verdict in favor of defendants. Brodsky filed a motion for a new trial, unaccompanied by any briefs. The District Court, concluding that denying the motion on procedural grounds was inappropriate because of the seriousness of the case, reviewed the transcript of the trial without any briefing, and denied the motion on the merits. The Court concluded that the admission of evidence regarding current industry practice, including approval by Underwriters Laboratories ("UL"),[1] was not error because the jury had been instructed that compliance with those practices did not shield the defendants from liability. The Court further concluded that the admission of the "limited references to the OSHA findings and sanction" was not error because the evidence was relevant to the issue whether the intervening negligence of Quality Beverage personnel was a superseding cause of Max Brodsky's death.

On March 25, 2002, the District Court denied Brodsky's motion for reconsideration of its decision not to grant a new trial. The District Court concluded that the introduction of evidence regarding industry standards was not erroneous because "all of the evidence now complained about was admitted without objection, and was either introduced by plaintiff or because plaintiff had opened the door to such evidence." The Court reaffirmed its conclusion that the citations and fines imposed by OSHA on Quality Beverage were properly admitted only to show intervening and superseding negligence on the part of Quality Beverage.

---

1. Underwriters Laboratories "is a private, nonprofit corporation that establishes standards and specifications for products in a wide variety of industries." *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.,* 827 F.2d 458, 467 (9th Cir.1987).

## 2. Discussion

Brodsky makes two arguments on appeal. Neither is persuasive to us. First, she argues that the District Court committed reversible error by admitting evidence of compliance with industry standards to show that there was no design defect. Second, she claims that the admission of evidence that OSHA had issued citations to Quality Beverage, and that Quality Beverage had paid fines as a result of those citations, was reversible error. She further alleges that the jury instructions given by the District Court failed to cure the prejudicial effects of either of these two errors.

### a. *Admission of Evidence Relating to Industry Standards*

Under Pennsylvania law, it is error to allow defendants in strict product liability actions to introduce evidence of industry standards relating to the level of care exercised by the manufacturer or the safety of the product. *See Blacker v. Oldsmobile Division, General Motors Corp.,* 869 F.Supp. 313, 314 (E.D.Pa.1994) (citing *Lewis v. Coffing Hoist Division, Duff–Norton Co. Inc.,* 515 Pa. 334, 343, 528 A.2d 590 (1987)). The Pennsylvania Supreme Court has concluded that admission of this evidence impermissibly injects negligence concepts into a strict liability action. *Lewis,* 515 Pa. at 343, 528 A.2d 590. Because negligence is irrelevant in a strict liability action and risks misleading the jury about the applicable standard of liability, the evidence is deemed inadmissible. *Id.*

■ In this context, Brodsky argues that she is entitled to a new trial because the District Court allowed the admission of evidence relating to industry standards, including evidence of UL approval. We disagree. Brodsky herself made mention of these standards in her case-in-chief, thereby opening the door for defendants to rebut that evidence. *Markovich v. Bell Helicopter Textron, Inc.,* 805 F.Supp. 1231, 1239 (E.D.Pa.1992) (rejecting argument that industry standards were impermissibly introduced because "it was the plaintiffs who opened the door to the introduction of industry standards"). The District Court properly allowed defendants to rebut the evidence introduced by Brodsky. *Id.* at 1240 ("Having introduced this testimony during their case-in-chief, the plaintiffs cannot preclude the defendants from offering testimony in their case-in-chief in order to rebut the statements.") (citing *Leaphart v. Whiting Corp.,* 387 Pa.Super. 253, 564 A.2d 165, 171 (1989)). Further, to ensure that admitting this evidence did not affect the outcome of the trial, the District Court instructed the jury that the admitted evidence did not shield the defendant from liability. Because admission of this evidence was not error, the District Court correctly denied the motion for a new trial.

### b. *Admission of Evidence Relating to OSHA Violations*

Brodsky's second contention of error relates to the admission of evidence relating to OSHA citations and fines imposed on Quality Beverage as a result of OSHA's conclusion that Quality Beverage had failed properly to train its employees regarding electrical matters. Brodsky argues that through these references "the notion of Quality Beverage's 'negligence' was injected throughout the lawsuit, and the confusion it caused was not curable by limiting instruction."

■ We are persuaded that it was not error for the District Court to allow the admission of this evidence. Because the claim against Mile High was one arising in strict liability, it would be improper for the notion of Mile High's negligence to be injected throughout the lawsuit (absent its injection by Brodsky herself) by the intro-

duction of OSHA safety standards. *See, e.g., Colegrove v. Cameron Machine Co.,* 172 F.Supp.2d 611, 617 (W.D.Pa.2001) (noting that OSHA standards are inadmissible to show lack of care on the part of the defendant in a strict liability action) (citing *Sheehan v. Cincinnati Shaper Co.,* 382 Pa.Super. 579, 555 A.2d 1352, 1354 (1989)). But the evidence in this case did not relate directly to OSHA standards, but to OSHA citations and fines. Further, the evidence of OSHA citations and fines was not admitted to show Mile High's negligence, but Quality Beverage's negligence. Part of Mile High's defense was that, even if the design of its product were defective, Quality Beverage's intervening negligence was a superseding cause of Max Brodsky's death. References to the fact that OSHA had found that Quality Beverage failed properly to train its employees were, therefore, relevant. Because the evidence did not relate to Mile High's negligence, there was no danger of jury confusion.

Finally, as the District Court noted, any evidence about whether Quality Beverage's negligence was a superseding cause was rendered irrelevant by the jury's verdict. Because the jury concluded that Mile High's design was not defective, it did not reach the issue of a possible superseding cause.

\*    \*    \*    \*    \*    \*

For these reasons, we affirm the District Court.