**Stephen NESBITT, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., et al., Defendants.**

**No. Civ.A. 03–6747.**

United States District Court, E.D. Pennsylvania.

Oct. 20, 2005.

James A. Keating, Mark J. Lewinter, Anapol Schwartz Weiss Cohan Feldman & Smalley PC, Philadelphia, PA, for Plaintiff.

Johnna Lynn D'Aurora, Warren E. Voter, John Michael Kunsch, Sweeney & Sheehan, PC, Philadelphia, PA, for Defendants.

### *MEMORANDUM OPINION*

DAVIS, District Judge.

Presently before the Court are Plaintiff's Motion to Preclude Reference to Plaintiff's Juvenile Conviction and Past Alcohol and Drug Use (Doc. No. 50), Plaintiff's Motion to Preclude Defendants' Expert, Michael L. Gililland ("Gililland"), From Testifying as to Human Factors at Trial (Doc. No. 51), Plaintiff's Motion to Preclude Evidence of or from the Insurance Claims Investigation (Doc. No. 52), Plaintiff's Motion to Preclude Defendants' Expert, Paul A. Cyr ("Cyr"), from Testifying at Trial (Doc. No. 53), Plaintiff's Mo-

tion to Preclude Evidence of the Taping Up of the Lower Blade Guard (Doc. No. 54), Plaintiff's Motion to Preclude Evidence of Plaintiff's Own Conduct (Doc. No. 55), Plaintiff's Motion to Preclude Cyr's Supplemental Report from Trial (Doc. No. 74), Defendants' Motion to Preclude Evidence of Other Accidents Involving Radial Arm Saws (Doc. No. 56), Defendant's Motion to Preclude Plaintiff's Exhibits P41, P50, P51, P52, and P82 (Doc. No 57), Defendants' Motion to Preclude Reference to Plaintiff's Exhibits P29–P40, P42–49, and P58–64 (Doc. No. 59), and all responses and reply briefs thereto.

For the following reasons, this Court makes the following rulings. The Court grants defendants' three motions upon the conditions expressed in this opinion. (Doc. No. 56, 57, 59). In addition, the Court grants plaintiff's motion to preclude defendant from referring to plaintiff's juvenile conviction and past alcohol and drug use (Doc. No. 50); grants plaintiff's motion to preclude Michael Gililland from testifying that plaintiff would not have followed additional warnings based upon human factors principles, unless plaintiff first presents evidence that this supplemental warning would have been directed to plaintiff (Doc. No. 51); and grants plaintiff's motion to preclude evidence from the insurance claims investigation to the extent that plaintiff's motion seeks to preclude opinion testimony from George J. Lampman on the issue of the saw's condition during his investigation (Doc. No. 52). The Court denies plaintiff's remaining motions upon the conditions expressed in this opinion. (Doc. No. 53, 54, 55, 74).

## I. Brief Factual and Procedural History

On January 13, 2003, plaintiff Stephen Nesbitt ("plaintiff") suffered injuries to his left hand during the use of a Craftsman Model 113.1964621 10″ radial arm saw (the "saw"). (*See* Pl. Compl., at ¶ 9). Plaintiff was using the saw during the course of his employment at S & S Packaging ("S & S"). (*Id.*, at ¶ 7). Plaintiff does not remember how the accident occurred, although the parties' experts agree that the available evidence suggests that plaintiff pulled the saw carriage across his hand during a crosscut maneuver on cardboard material. (*See* Pl. Pre-trial Mem., at 8).

The saw was manufactured by defendant Emersion Electric Company ("Emerson") in March 1995, and was sold by defendant Sears, Roebuck and Company ("Sears") to S & S in that same year. (*See* Compl., at ¶ 8). An Owner's Manual (the "Manual") accompanied the sale of the saw. (*See* Pl. Pre-trial Mem., at 8).

The saw came equipped with a Metzger guarding system, which includes, *inter alia*, an upper blade guard, a lower blade guard, a hold down, a riving knife, and a set of pawls. According to the Manual, the riving knife acts as a partial barrier to the front blade during cross-cutting operations, and the pawls grab into the work-piece surface, helping stop kickback motion from outfeed to infeed side during ripping operations. (*See* Manual, attached as Ex. A to Pl. Pre-trial Mem., at 6). Although the riving knife and pawls accompanied the sale of the product, both parties agree that the riving knife and pawls were absent from the saw at the time of plaintiff's accident on January 13, 2003. (*See* Pl. Pre-trial Mem., at 8).[1] A dispute exists as to whether the owner and safety officer of S & S, Bradley Stewart ("Stewart"), failed to install this safety equipment on the saw during its assembly

---

**1.** Plaintiff refers to the pawls and riving knife as the "anti-kickback device." (*See* Pl. Br. In Opp. To Def. Mot. To Preclude Other Accidents, at 7).

in 1995; or whether this safety equipment was pre-installed and S & S purposefully removed the riving knife and pawls from the saw upon receipt. (*See* Def. Mot. To Preclude Prior Accidents, at ¶ 12; Pl. Mot. In Opp'n., at ¶ 12).

Although plaintiff's complaint alleged claims of negligence, strict liability, and breach of warranty, plaintiff proceeds solely under a strict liability theory. (*See* Pl. Pre–Trial Memorandum, Doc. No. 44, at 1, 16–17; Pl. Stipulation, Doc. No. 37). Plaintiff's lone theory of liability is that the saw was defective due to inadequate warnings regarding the safety function of the riving knife and anti-kickback pawls in crosscutting operations. (*Id.,* at 1, 7–9).

## II. Discussion

Both plaintiff and defendants have filed an array of motions *in limine.* In ruling upon these motions, the Court is guided by the following evidentiary rules. First, Federal Rule of Evidence 402 states that "evidence which is not relevant is not admissible." Fed.R.Evid. 402. Relevant evidence is defined as any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The Supreme Court has characterized this standard as a "liberal one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Second, even if a piece of evidence is relevant, it may still be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay, waste or time, or needless presentation of cumulative evidence." *See* Fed.R.Evid. 403. The Third Circuit has defined the phrase "danger of unfair prejudice" as an "undue ten-

dency to suggest decision on an improper basis." *Bhaya v. Westinghouse Elec. Corp.,* 922 F.2d 184, 188 (3d Cir.1990).

### A. Defendants' Motion to Preclude Plaintiff's Exhibits P41, P50, P51, P52, and P82

■ Defendants seek to preclude plaintiff from offering Exhibits P41, P50, P51, P52, and P82, which pertain to industry standards and Occupational Safety and Health Administration ("OSHA") regulations, at trial for the purpose of establishing that the saw was defective due to a lack of warnings. (*See* Def. Br., at 5–8). Plaintiff does not oppose defendants' motion, to the extent that defendants themselves are precluded from introducing such evidence of OSHA and ANSI standards at trial. (*See* Pl. Br., at 2).

It is clear that a manufacturer may not introduce evidence of compliance with industry and OSHA standards to demonstrate the absence of a produce defect. *See, e.g., Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1073 (3d Cir.1979) (trial judge erred under Pennsylvania law by permitting tank manufacturer to introduce testimony regarding compliance with trade custom in strict liability failure to warn case, as manufacturer's compliance with trade custom was irrelevant to whether product itself was defective); *Lewis v. Coffing Hoist Div., Duff–Norton Co., Inc.,* 515 Pa. 334, 528 A.2d 590, 594 (1987) (evidence of industry standards inadmissible for purpose of establishing reasonableness of defendant's conduct in making design choice in strict product liability claim); *Sheehan v. Cincinnati Shaper Co.,* 382 Pa.Super. 579, 555 A.2d 1352, 1355 (1989) (evidence of OSHA standards inadmissible in strict liability claim for purpose of showing absence of design defect, as such evidence shifts jury's focus from existence of defect to reasonableness of manufacturer's

conduct in not providing safety device for shear). However, in one of the earliest strict liability cases in Pennsylvania jurisprudence, the Pennsylvania Supreme Court held that a plaintiff could introduce evidence of a defendant's non-compliance with industry standards to demonstrate the existence of a product defect. *See Forry v. Gulf Oil Corp.*, 428 Pa. 334, 237 A.2d 593, 598 (1968) (concluding that jury could infer existence of product defect from manufacturer's failure to comply with design and manufacturing customs of tire industry); 3 West's Pa. Prac., Torts: Law and Advocacy § 9.28 ("Presumably, *Forry* remains an accurate statement of Pennsylvania law"). Although the Pennsylvania Supreme Court has never retreated expressly from this position, the Court need not address this issue because plaintiff has agreed not to oppose defendant's motion, perhaps for fear that the introduction of such evidence would "open the door" for defendants to introduce evidence of compliance with such standards. *See, e.g., Markovich v. Bell Helicopter Textron, Inc.*, 805 F.Supp. 1231, 1239 (E.D.Pa.1992) (plaintiff's introduction of defendant's non-compliance with industry standards in strict liability suit opens door for defendant to rebut testimony in its case-in-chief). Accordingly, this Court grants defendant's motion, finding that both defendant and plaintiff are precluded from introducing P41, P50, P51, P52, and P82 at trial for the purpose of establishing the existence or absence of a product defect.

### B. Defendants' Motion to Preclude Evidence of Other Accidents Involving Radial Arm Saws

Defendants seek to preclude plaintiff from introducing any evidence of previous accidents of defendants' radial arm saws.

(*See* Def. Br., at 9–11). Defendants claim that evidence regarding other accidents is not relevant to the determination of whether the saw is defective and, even if relevant, this evidence should be excluded because its probative value is substantially outweighed by the danger of prejudicing the jury into thinking that the current saw is defective by virtue of prior, factually dissimilar accidents. (*Id.*).

Plaintiff agrees that certain evidence should be excluded. Specifically, plaintiff concedes that the documentation from the case of *Albertson v. Emerson,* as well as the thousands of pages of documents regarding all claims and lawsuits against defendants relating to radial saws, are not relevant. (*See* Pl. Br., at 13). Nonetheless, plaintiff argues that the 1985 and 1989 Emerson internal studies involved similar facts as those at issue in this litigation, and, therefore, such studies are relevant to the adequacy of defendant's warnings regarding the installation and lowering of the pawls and riving knife (collectively the "anti-kickback device") prior to crosscutting, to the issue of causation, and to the foreseeability of the removal/non-installation of the saw's anti-kickback device. (*Id.*, at 13–18).

### 1. Standard for Admissibility of Prior Accidents

Prior accidents concerning a product may be admitted into evidence in a product liability case to establish the dangerous nature of the product, notice of such dangerousness, and causation, but only when "the proponent demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." [2] *See, e.g., Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir.1995); *Majdic v. Cincinnati Machine*

---

**2.** Plaintiff endorses this standard for purposes of proving notice to the manufacturer, causation, or the existence of dangerous or defective conditions. (*See* Pl. Br., at 11).

*Co.*, 370 Pa.Super. 611, 537 A.2d 334, 340–341 (1988) ("Evidence of similar accidents occurring at substantially the same place and under the same or similar circumstances is generally admissible to prove a manufacturer's constructive notice of a dangerous or defective condition"). It is therefore not enough that the occurrence of previous accidents involved the very product at issue in the current litigation. *See Soldo v. Sandoz Pharmaceuticals Corp.*, 244 F.Supp.2d 434, 550 (W.D.Pa. 2003). In fact, in order for a court to make a finding of substantial similarity, and, therefore, to permit the admission of such evidence, the court "must be apprised of the specific facts of previous accidents." *Barker*, 60 F.3d at 163.

## 2. Application

■ Plaintiff contends that the accidents involved in the 1985 and 1989 Emerson internal studies are factually similar to the circumstances in this litigation. Plaintiff's argument proceeds as follows. First, plaintiff argues that factual similarities connect all of the accidents in the 1985 and 1989 studies by virtue of defendant's decision to handpick those accidents to form part of the product safety studies. (*See* Pl. Br., at 10, 13). Second, plaintiff argues that the accidents in the 1985 and 1989 studies contain a similar factual predicate

to that at issue in this litigation, including both the type of product[3] and the method of injury.[4] (*Id.*, at 13–16).

This Court finds that plaintiff has not carried his burden of demonstrating substantial similarity. First, plaintiff relies upon the cursory statements of the accidents provided in the 1985 and 1989 studies to establish similarity, without presenting the specific factual circumstances behind each accident that plaintiff seeks to admit. Nor does plaintiff request a hearing to present such factual circumstances. *See, e.g., Schmidt v. Duo Fast Corp.*, 1995 WL 648471, at *2 (E.D.Pa. Oct.30, 1995) (noting that proponent "bears the burden of demonstrating the similarities between the proffered accidents and the incident in suit" and conducting pretrial hearing to scrutinize plaintiff's presentation of facts concerning proffered accidents prior to making similarity determination). More glaringly, plaintiff fails to identify the warnings that accompanied the saws investigated in the 1985 and 1989 studies.[5] This lack of a showing as to the factual predicate behind the accidents in the 1985 and 1989 studies, and as to the warnings that allegedly led to these accidents, precludes a judicial finding of similarity at this time both among those accidents studied and between those accidents and plaintiff's accident. *See, e.g., Barker*, 60 F.3d at 162.[6]

3. Plaintiff argues that although the predecessor saws studied in the 1985 and 1989 investigations are physically different than the saw at issue in this matter, in that the 1985 and 1989 saws lack a Metzger guard, the basic operation of the radial saws is identical, including the mutual utilization of anti-kickback devices and the lack of a sufficient guarding mechanism. (*See* Pl. Br., at 14).

4. Plaintiff argues the method of injury behind a substantial number of accidents in the 1985 and 1989 studies and plaintiff's accident involved an amputation injury during a crosscut maneuver when the anti-kickback device was

completely missing. (*See* Pl. Br., at 9–11, 13–15).

5. It is important to note that plaintiff proceeds on a failure to warn strict liability claim, as compared to a design or manufacturing defect strict liability claim. Proof of the inadequacy of defendants' warnings, of causation, or of notice from the existence of past accidents necessarily requires consideration of the warnings that accompanied the saw at issue in those previous accidents.

6. The Court fails to infer that the accidents studied in the 1985 and 1989 are factually

Second, the 1985 and 1989 studies investigated accidents associated with a different model radial saw than the instant saw. Indeed, plaintiff concedes that the earlier models lacked lower-blade guards and a Metzger guard, and that the anti-kickback device looked different. (*See* Pl. Br., at 14). Furthermore, although plaintiff suggests that the pre-Metzger radial saws had a "type" of anti-kickback device that performed the same function as the anti-kickback device attached to the instant saw, thereby establishing product similarity for purposes of introducing the 1985 and 1989 studies, plaintiff provides no evidence, such as affidavit testimony or documentation, in support of this analysis.

Finally, even assuming that the 1985 and 1989 studies identified accidents associated with the radial saw at issue in this litigation and that the cursory descriptions of the accidents provided in the studies present specific facts from which to determine similarity, only a small percentage of the studied accidents seem to have some factual similarity to the circumstances behind plaintiff's accident. For instance, in the 1985 study, which evaluated 123 accidents, only three amputations occurred due to the use of a radial saw in crosscutting mode with a missing anti-kickback device. (*See* February 25, 1985 Study, attached as Ex. C to Pl. Pre-trial Mem.). In the 1989 study, which used a sample of 127 accidents, the guard was known to be missing in only four cases, and the study noted that "very little is recorded involving proper guard or anti-kickback pawl adjustment." (*See* February 21, 1989 Study, attached as Ex. D to Pl. Pre-trial Mem.). Moreover, in reaching these statistical con-

clusions, both studies used accident circumstance criteria that plaintiff does not discuss in his attempt to establish similarity: the 1985 study evaluated the manner of injury, such as whether the injury occurred when the employee reached for a workpiece, reached for a cut-off piece, or left the saw running; and the 1989 study evaluated various categories of blade contact injuries, such as causal contact, forced contact, and carriage movement, that plaintiff does not discuss in his attempt to establish similarity between his accident and those analyzed in the 1989 study. (*Id.*). Perhaps more importantly, the 1985 and 1989 studies failed to indicate both why the anti-kickback device was missing and what type of warnings were provided with or on the product concerning the use of the anti-kickback device. These factual differences, omissions, and inconsistencies preclude plaintiff from introducing the *entirety* of the 1985 and 1989 studies to show that the instant saw contained inadequate warnings concerning the use of the riving knife; that the inadequate warnings caused plaintiff's accident; or that it was foreseeable that, based upon these inadequate warnings, an employer would fail to install and/or remove the anti-kickback device.[7]

Consequently, because plaintiff has failed to carry his burden of demonstrating substantial similarity between the accidents studied in the 1985 and 1989 reports and the factual predicate for plaintiff's accident, this Court finds that plaintiff is not entitled to introduce the 1985 and 1989 studies *in their entirety* to demonstrate the inadequacy of defendants' warnings,

similar from the naked fact that Merson chose certain accidents for a particular study. (*See* Pl. Br., at 10–13).

7. The Court also finds that the prejudicial effect of introducing the entirety of the 1985

and 1989 studies, based upon the factual similarity between a few accidents identified in the 1985 and 1989 studies and plaintiff's accident, would outweigh the probative value of these studies. *See* Fed. R. Ev. 403.

causation, or the foreseeability of the removal/non-installation of the anti-kickback device.[8]

### C. Defendants' Motion to Preclude Reference to Plaintiff's Exhibits P29–P40, P42–49, and P58–64

Defendants seek to preclude plaintiff from introducing P29–P40, P42–P49, an P58–P64 for the purpose of establishing that the saw was defective due to a lack of warnings. (*See* Def. Br., at 8). Defendants argue that these exhibits focus on defendants' conduct in designing, patenting, and developing predecessor radial saws as well as the instant saw, and are therefore irrelevant to plaintiff's strict liability claim. (*Id.*, at 6–9).

This Court grants defendant's motion. Plaintiff concedes the inadmissibility of P29–P40, P42–P46, and P58–P64. (*See* Pl. Br., at 1); *see Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000, 1006 (2003) (Pennsylvania strict liability law places product on trial, not manufacturer's conduct). Furthermore, for the reasons expressed in Section II–B of this opinion, plaintiff is precluded from introducing P47, P48, and P49, which include the 1985 and 1989 studies of accidents involving predecessor radial saws.

### D. Plaintiff's Motion to Preclude Defendants' Expert, Paul A. Cyr, from Testifying at Trial

Plaintiff seeks to preclude defendants' expert, Paul Cyr ("Cyr"), from testifying that the saw was not defective because it met applicable ANSI and OSHA standards. (*See* Pl. Br., at 9–10). According to plaintiff, defendants' use of reasonable care in providing warnings, as illuminated through compliance with ANSI and OSHA standards, is irrelevant to a strict liability action. (*Id.*).

This Court finds that defendants are precluded from introducing testimony, through Cyr, that the saw at issue in this litigation was not defective because it complied with various industry and federal standards, including ANSI and OSHA standards. *See, e.g., Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1073 (3d Cir. 1979); *Colegrove v. Cameron Machine Co.,* 172 F.Supp.2d 611, 617 (W.D.Pa.2001); *Straub v. Simmons Co.,* 1992 WL 176419, at *4 (E.D.Pa. July 17, 1992) (industry standards inadmissible in strict liability case under Pennsylvania law on issue of manufacturer's liability); *Lewis,* 528 A.2d at 594 (Pa.1987). As discussed, such evidence inappropriately introduces negligence concepts into a strict liability action, improperly shifting a jury's focus from the defective nature of a particular product onto the reasonableness of the manufacturer's conduct in designing, manufacturing, and distributing the product, an issue which is irrelevant as to whether liability attaches. *See Sheehan,* 555 A.2d at 1355.

Nonetheless, defendants may introduce testimony, through Cyr, concerning the alleged failure of plaintiff's employer to comply with OSHA and industry standards. This testimony is relevant to the issue of causation. For instance, Cyr's testimony is relevant to whether S & S and Bradley Stewart, owner and safety manager of S & S, acted in a highly reckless manner in failing to comply with OSHA standards, including the alleged failure to train employees about using the riving knife on the saw during crosscuts, the removal of this safety device, and the removal of the anti-kickback pawls; a find-

---

8. To the extent that plaintiff seeks to introduce individual accidents referenced in the 1985 and 1989 studies, plaintiff must request a pre-trial hearing, make an appropriate offer of proof, and receive a formal ruling from this Court as to the admissibility of such evidence.

ing of gross negligence by the jury would constitute a superceding cause of plaintiff's injuries and would defeat liability as to defendants. (*See* September 21, 2005 Supplemental Report of Paul Cyr, attached as Ex. C to Def. Response); *see, e.g., Brodsky v. Mile High Equipment Co.,* 69 Fed.Appx. 53, 57 (3d Cir.2003) (unpublished opinion) (permitting defendant manufacturer to introduce evidence of OSHA citations and fines against employer, including citations for failing to train employees, to show that installer of allegedly defective product was superceding cause of plaintiff' death); *Fisher v. Walsh Parts & Service Co., Inc.,* 296 F.Supp.2d 551, 566 n. 5 (E.D.Pa.2003) (noting that courts permit evidence of industry standards in strict liability cases to show that employer's gross negligence absolved manufacturer of liability); *Sheehan,* 555 A.2d at 1354 (finding evidence of OSHA standards inadmissible in strict liability action for purpose of showing reasonableness of product's design, but noting that defendant failed to offer viable theory of admissibility as to issue of causation).[9]

**E. Plaintiff's Motion to Preclude Defendants From Presenting Any Evidence Based on the Conclusions Provided in Cyr's Supplemental Report**

■ Plaintiff argues that Cyr's supplemental report, which seeks to attribute the cause of the accident to S & S, is inadmissible for attempting to introduce negligence principles into this strict liability action. (*See* Pl. Br., at 7–8).[10] For the reasons expressed in Section II–D, this

Court agrees that the analysis and conclusions presented through Cyr's supplemental report are inadmissible for the purpose of demonstrating the absence of a product defect. *See, e.g., Forrest v. Beloit Corp.,* 424 F.3d 344 (3d Cir.2005) ("manufacturer in a products liability action may not invoke industry or OSHA standards to argue that the plaintiff's employer, rather than the manufacturer, had the responsibility to provide the equipment or instructions necessary to make a product safe for its intended use"). However, for these same reasons, the Court finds that such evidence is admissible as to the issue of causation, and, in particular, as to whether the alleged gross negligence of S & S constitutes a superceding cause of plaintiff's injuries. *See, e.g., Brodsky,* 69 Fed.Appx. at 57; *Dillinger v. Caterpillar, Inc.,* 959 F.2d 430, 442 (3d Cir.1992) (although evidence of plaintiff's ordinary negligence is inadmissible in products liability proceeding, "evidence that a plaintiff acted in a highly reckless fashion is akin to evidence that a plaintiff misused a product which is admissible in a section 402A proceeding under Pennsylvania law"); *Charlton v. Toyota Industrial Equip.,* 714 A.2d 1043, 1047 (Pa.Super.Ct.1998) (evidence of highly reckless conduct admissible to defeat causation in strict products liability action).

**F. Plaintiff's Motion to Preclude Reference to Plaintiff's Juvenile Conviction and Past Alcohol and Drug Use**

Plaintiff seeks to preclude evidence of plaintiff's juvenile criminal conviction for

---

**9.** Plaintiff does not argue that even if evidence of alleged violations of OSHA standards by S & S was relevant, this relevance would be substantially outweighed by the prejudice caused by its admission.

**10.** Plaintiff does not seek to preclude Cyr's supplemental report on the basis of untimeliness. However, to the extent plaintiff does,

the Court notes both that the report was prepared in response to the supplemental report of plaintiff's expert, a report that did not comply with the discovery deadlines, and that the foundation for the analysis presented in Mr. Cyr's supplemental report exists in his original, timely expert report. (*See* Second Amended Scheduling Order, Doc. No. 27).

burglary and prior evidence of alcohol and substance abuse. (*See* Pl. Br., at 7). Plaintiff contends that this evidence is irrelevant pursuant to Federal Rule of Evidence 402, and, even if relevant, such evidence is highly inflammatory and unfairly prejudicial pursuant to Federal Rule of Evidence 403. (*Id.*, at 7–10).

Defendants concede that they have no intention of suggesting that plaintiff was under the influence of any substance at the time of the incident. (*See* Def. Br., at 4). Instead, defendants argue that plaintiff's history of substance abuse and his juvenile conviction are relevant to a determination of plaintiff's damages, which requires a comparison between plaintiff's mental health status at the time of the incident and his mental health status subsequent to the incident. (*Id.*).

■ This Court grants plaintiff's motion. First, with respect to plaintiff's juvenile conduct, the Court finds that plaintiff's conviction for burglary at the age of 14 and his placement in a detention center at the age of 13 for hitting a teacher are irrelevant to plaintiff's mental health status at the time of the accident, which occurred when plaintiff was 24 years old. *See* Fed.R.Evid. 402. Furthermore, even if marginally relevant, testimony concerning these past instances of misconduct would unfairly prejudice the jury, creating the inference that plaintiff is, among other qualities, untrustworthy; this prejudicial effect would clearly outweigh the probative value of such evidence. *See* Fed.R.Evid. 403.

■ Second, with respect to plaintiff's past drug use, the Court finds that any testimony concerning plaintiff's use of marijuana as a teen and his past use of alcohol, for which no time period is specified, is irrelevant to the issue of damages. Plaintiff testified that he no longer uses marijuana or alcohol, and did not use such

drugs prior to the accident. (*See* Dr. Ring's Expert Report, attached as Ex. B to Pl. Br., at 3; Pl. Dep., attached as Ex. C to Pl. Br., at 72–73). Nor do the parties' experts link plaintiff's adolescent use of marijuana and alcohol to plaintiff's mental state at the time of the accident. (*See* Dr. Ring's Expert Report, at 5; Dr. Fenichel's Expert Report, attached as Ex. A to Pl. Br., at 4, 7). Furthermore, even if marginally relevant, evidence concerning plaintiff's previous use of marijuana and alcohol would unfairly prejudice the jury against plaintiff, creating the image that plaintiff is a habitual drunkard or drug user who was perhaps under the influence of such drugs at the time of the accident. *See* Fed. R.Evid. 403.

### G. Motion to Preclude Defendants' Expert, Michael L. Gililland, From Testifying as to Human Factors at Trial

Plaintiff seeks to preclude defendants' expert, Michael Gililland ("Gililland"), from testifying about human factors principles and their application to whether plaintiff would have followed additional on-product or in-manual warnings. (*See* Pl. Br., at 9–13). Plaintiff contends that Gililland lacks qualification as an expert witness in the area of human factors and that, even if qualified, the issue of plaintiff's capacity to follow additional warnings is within the purview of the ordinary layperson and therefore not likely to assist the trier of fact. (*Id.*).

Gililland's expert report states that if plaintiff followed two on-product warnings, he would not have been injured by the allegedly defective saw. (*See* Report, attached as Ex. A to Pl. Br., at 7–8). Gililland's report also rebuts the theory of plaintiff's expert, Craig D. Clauser, who asserts that additional warnings concerning installation, placement, and use of the

riving knife would have made the product safe, by arguing that plaintiff's failure to comply with the two on-product warnings means that plaintiff would also fail to comply with additional warnings requiring more effort to follow. (*Id.*, at 8). According to Gililland's report, plaintiff's theory concerning additional warnings and the likelihood of plaintiff following these warnings is contrary to established "human factors principles." (*Id.*).

### 1. Standard

Rule 702 of the Federal Rules of Evidence permits the admissibility of expert testimony upon the satisfaction of three elements: qualification; reliability; and fitness. *See, e.g., Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir.2003). First, the witness must be "qualified" to testify, which requires that the witness possess specialized knowledge in the subject matter of her testimony; this requirement has been interpreted liberally. *Id.* Second, the testimony must be "reliable," which requires the expert to base her opinion on scientific methods and procedures. *Id.* Third, the expert testimony must be "fit," which requires the testimony to be relevant and to assist the trier of fact. *Id.*

### 2. Application

■ This Court finds that Gililland is clearly qualified under Rule 702 to testify as to the effect of warnings based upon human factors principles. Although plaintiff contends that Gililland's resume is devoid of specialization in the area of "human factors," this Court finds that Gililland's resume, including his practical experience as an engineer, product safety director, and author of various power tool manuals, clearly establishes his knowledge in the area of how consumers respond to warnings. *See, e.g., Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055 (3d Cir.1997) ("Rule

702 mandates policy of liberal admissibility, both with respect to the substantive as well as the formal qualification of experts"). For instance, Gililland took three classes on human factors methodology and engineering between October 1989 and July 1991, a class on writing warnings for products, and a class on writing manuals and procedures. (*See* Resume, attached as Ex. A to Pl. Br.). He is a member of the Human Factors & Ergonomics Society and of the Consumer Product Safety Commission's Human Factors and Engineering Committees. (*Id.*). Furthermore, Gililland is the author of six power tool user manuals, including the Owner's Manual for the radial arm saw at issue in this litigation; this process of writing manuals clearly involves the application of principles concerning the effect of warnings on human behavior. (*Id.*); *see, e.g., Hamilton v. Emerson Electric Co.*, 133 F.Supp.2d 360, 369 (M.D.Pa.2001) (psychologist qualified to give expert testimony on human factors principles in strict liability design defect case in part because expert played a role in writing warnings and instructions and was exposed to design procedures). Finally, as former Director of Product Safety of Emerson Tool Company, former Product Safety Consultant for North Court Engineering Inc., and former Director of Product Development and Product Reliability for Aircap Industries, Inc., Gililland has extensive practical experience through accident investigation analyzing user behavior and the effect of warnings on consumers. *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir.1998) (qualifications can be based on practical experience as well as academic training).

This Court also finds that Gililland's testimony concerning whether plaintiff would have followed an additional warning will assist the trier of fact, but only if plaintiff introduces testimony that the proposed additional warning should have been directed

to and heeded by plaintiff as well as his employer. For instance, to the extent that plaintiff's theory is that the additional warning concerning installation and use of the riving knife should have been directed to S & S, the party assembling the saw, Gililland's testimony that plaintiff would not have followed such an additional warning based upon non-compliance with and/or the failure to read allegedly inadequate warnings is irrelevant. *See, e.g., Colegrove,* 172 F.Supp.2d at 620 (plaintiff's awareness of product's dangerousness not relevant to rebut heeding presumption in strict liability case where employer made decisions about what equipment to use and how to use it, and the employee had no choice in the manner; instead, defendant must provide evidence that employer, rather than employee, would not have heeded warning if given). However, to the extent that plaintiff's theory is that an additional warning should have been directed both to plaintiff and his employer, perhaps by way of an on-product warning, Gililland's testimony becomes relevant and the trier of fact would benefit from Gililland's expert opinion concerning the ineffectiveness of another warning in preventing this accident; specifically, that plaintiff would not have heeded an additional warning based upon the application of human factors principles to plaintiff's behavior.[11]

■ In summary, this Court finds that Gililland is qualified to testify as an expert

on the issue of whether plaintiff would have followed an additional warning concerning use of the riving knife based upon human factors principles. However, this Court also finds that such testimony will only be useful to the trier of fact if plaintiff presents testimony that the additional warning would have been directed to and heeded by plaintiff. Consequently, Gililland is precluded from testifying that plaintiff would not have followed the proposed additional warning, unless plaintiff presents evidence that this supplemental warning would have been directed to plaintiff.

### H. Plaintiff's Motion to Preclude Evidence of or from the Insurance Claims Investigation

Plaintiff seeks to preclude defendant from introducing any evidence arising from an insurance investigation performed by investigator George J. Lampman ("Lampman") on behalf of Lackawanna Insurance Group. (*See* Pl. Br., at 8–10). Although plaintiff's motion seeks broad relief in the form of the preclusion of all evidence connected to the investigation, plaintiff specifically contends that Lampman's comments concerning the condition of the radial saw[12] are inadmissible because these comments require specialized, technical knowledge of engineering, which Lampman lacks. (*Id.*). According to plaintiff, Lampman therefore must be preclud-

---

**11.** Clauser's report suggests that an additional on-product or in-manual warning concerning placement of the riving knife for cross cutting would have been "heeded" by "owners and operators," which, in turn, would have prevented plaintiff's injuries. (*See* December 30, 2004 Clauser Report, attached as Ex. A to Def. Resp. To Pl. Mot to Preclude Cyr from Testifying, at 5). If this theory of liability is presented at trial, Gililland's testimony rebutting Clauser's heeding assertion and the operation of the heeding presumption is clearly relevant.

**12.** This includes the following statements: "It is extremely difficult to imagine how an attentive operator could injure himself in the simple operation being conducted at S & S Packaging. It does not appear to me that there is anything wrong with or missing from this saw that would result in injuries to operators using the saw properly." (*See* Lampman Report, attached as Ex. A to Pl. Br., at 2).

ed from testifying as to his opinion of the saw's condition because he is not qualified as an expert to pursuant to Federal Rule of Evidence 702. (*Id.*).

In response, defendants contend that they are using Lampman as a fact witness, rather than as an expert witness. (*See* Def. Br., at 4). In so doing, defendants concede that they will not solicit any testimony from Lampman concerning the condition of the radial saw in his March 5, 2003 report. (*Id.*). Furthermore, the evidence of the investigation that defendants seek to introduce-fact testimony of Lampman's actions during his investigation at S & S on January 21, 2003 and the photographs that Lampman took that day of the saw-is both relevant and non-prejudicial. (*See* Def. Br., at 4). Consequently, this Court grants plaintiff's motion *in limine* to the extent that plaintiff seeks to preclude Lampan from providing opinion testimony on the condition of the saw during his investigation or on plaintiff's degree of attentiveness during his operation of the saw on the day of the accident. This Court denies plaintiff's motion in all other respects.

## I. Plaintiff's Motion to Preclude Evidence of the Taping Up of the Lower Blade Guard on the Radial Saw By Employees

 Plaintiff seeks to preclude defendants from introducing evidence as to whether the lower blade guard on the saw was taped in a raised position prior to the accident. (*See* Pl. Br., at 9–13). Plaintiff contends that evidence concerning the taping of the lower blade guard is irrelevant because, even if the lower blade guard was functioning properly, it would not have prevented plaintiff's injury. (*Id.*, at 10–11). Furthermore, plaintiff argues that even if such evidence was relevant, this relevance is outweighed by the prejudicial effect of the evidence; according to plaintiff, such evidence would focus the jury's attention on plaintiff's actions, rather than on whether defendants failed to warn about the use of the anti-kickback device during crosscuts. (*Id.*, at 11–13).

Defendants argue that evidence concerning the taping of the lower blade guard is relevant to defendants' attempt to defeat causation. (*See* Def. Br., at 7–9). Specifically, defendants argue that the practice of taping the lower blade guard in contradiction to the in-manual warnings provides circumstantial evidence that plaintiff and his employer would not have followed additional on-product or in-manual warnings, thereby rebutting the presumption within Pennsylvania case law that a user/consumer is presumed to heed a warning, if given. (*Id.*).

This Court finds that evidence of the practice among S & S employees of taping the lower blade guard, including testimony from Loretta Frombach suggesting that plaintiff engaged in this practice, is relevant to the issue of causation. This evidence challenges whether plaintiff can meet his evidentiary burden under Pennsylvania law to prove that an adequate warning to plaintiff and/or his employer concerning the necessity of using the riving knife during crosscuts would have prevented plaintiff's injury. *See, e.g., Pavlik v. Lane Limited Tobacco Exporters Int'l,* 135 F.3d 876, 881 (3d Cir.1998) (noting that Pennsylvania law requires plaintiff to submit evidence that existence of adequate warning might have prevented the injury and finding that although plaintiff enjoys a presumption that warning would be heeded, defendant may rebut this warning by introducing evidence that warning would not have been heeded, if given). For instance, testimony that S & S's employees, including plaintiff, used the lower blade guard in a taped position and that S & S

acquiesced in this practice, in violation of the warnings in the Manual, provides evidence from a which a jury could conclude that the inclusion of additional warnings as to the use of the riving knife during cross-cuts would not have been heeded by plaintiff or S & S. *See, e.g., Coward v. Owens–Corning Fiberglas Corp.*, 729 A.2d 614, 622 (Pa.Super.Ct.1999); *cf. Anderson v. Hedstrom Corp.*, 76 F.Supp.2d 422, 441 (S.D.N.Y.1999) (under New York law, heeding presumption can be rebutted by proof that adequate warning would have been futile since plaintiff would not have read it, based upon plaintiff's failure to read allegedly inadequate warnings on product); *Hulmes v. Honda Motor Co.*, 960 F.Supp. 844, 854 (D.N.J.1997) (under New Jersey law, evidence that plaintiff was warned of alcohol consumption prior to riding allegedly defective product and chose to consume alcohol anyway is relevant to rebutting heeding presumption in failure to warn theory of liability, in that it "portrays an individual who is unlikely to heed warnings"). Furthermore, the Court finds that this probative value outweighs any prejudicial effect, particularly because plaintiff has failed to articulate with clarity any prejudicial effect that such testimony might have. *See* Fed.R.Evid. 403.

### J. Plaintiff's Motion to Preclude Evidence of Plaintiff's Own Conduct

Plaintiff contends that evidence regarding plaintiff's actions prior to and at the time of the accident, including plaintiff's failure to read the Manual prior to operating the saw, are inadmissible to show the absence of causation, product misuse, assumption of the risk, and highly reckless behavior. (*See* Pl. Br., at 7–20).

In response, defendants contend that it is impermissible at the pre-trial stage to preclude testimony in favor of such defenses. (*See* Def. Br., at 6). Defendants assert that the applicability of these defenses is a question for the jury, and, at the very least, the court must permit defendants to present their case prior to making a ruling as to whether the jury may be instructed on these issues. (*Id.*). Furthermore, assuming *arguendo* that the Court is inclined to rule on these issues at the pre-trial stage, defendants argue that they have introduced enough evidence to submit these issues to a jury. (*Id.*, at 7–15).

#### 1. Standard

■■■ Under Pennsylvania law, a plaintiff's ordinary negligence is generally not admissible in a strict liability action. *See, e.g., Charlton*, 714 A.2d at 1047. However, a defendant may introduce evidence as to plaintiff's conduct if such evidence is relevant to establish that plaintiff assumed the risk, misused a product, or engaged in highly reckless conduct. *Id.; Dillinger*, 959 F.2d at 442.

#### 2. Application

The Court denies plaintiff's motion at this stage in the proceedings for several reasons. First, the Court finds that under Third Circuit precedent, it is premature to decide at this juncture whether plaintiff's conduct, in combination with that of S & S, triggers the availability of particular defenses related to causation, such as assumption of the risk, product misuse, and highly reckless conduct. The characterization of the conduct of plaintiff and S & S is a question of fact that must first be resolved by the jury; the resolution of this question (i.e., whether plaintiff and S & S acted appropriately, negligently, or in a highly reckless manner) will then inform the jury's determination of whether the inadequate warnings were a substantial cause of plaintiff's injuries. *See, e.g., Parks v. AlliedSignal, Inc.*, 113 F.3d 1327, 1336, 1340 (3d Cir.1997) (majority and con-

currence concluding that jury may consider evidence of plaintiff's conduct in determining causation only if *jury* determines that such actions were not reasonably foreseeable, extraordinary, outrageous, or reckless). Furthermore, the Court cannot say as a matter of law that the assumption of the risk doctrine is inapplicable to defendants without the presentation of evidence on certain issues, such as whether plaintiff used the saw as directed by S & S, what type of training plaintiff received from S & S, and whether plaintiff understood the dangers associated with using the saw without a riving knife. *See, e.g., Jara v. Rexworks,* 718 A.2d 788, 794–795 (Pa.Super.Ct.1998) (affirmative defense of assumption of risk not available to manufacturer in strict liability suit when plaintiff is required to use allegedly defective equipment during course of employment and uses the equipment as directed by employer, reasoning that plaintiff does not "voluntarily" assume the risk in such situations); Pa. Suggested Standard Civil Jury Ins. § 8.09 (2003) (noting that when testimony suggests that product was furnished by employer and used by employee accord-ing to employer's directions, court should either not charge on assumption of risk or supplement charge with circumstances that render defense unavailable).[13]

Second, the Court finds that if defendants present the testimony that they claim they will, plaintiff's conduct, in conjunction with that of S & S, will be relevant to the issue of causation. *See, e.g., Lewis v. Rego Co.,* 757 F.2d 66, 70–71 (3d Cir.1985) (evidence of misuse not an affirmative defense, but relevant to issue of defectiveness and causation); *Childers v. Power Line Equip. Rentals,* 452 Pa.Super. 94, 681 A.2d 201, 202 (1996) (evidence that plaintiff acted in highly reckless fashion impacts issue of causation in analogous fashion to evidence of product misuse). For instance, defendants plan to introduce testimony that: (a) S & S failed to read the Manual; (b) S & S failed to provide its employees using the saw with a copy of the Manual; (c) S & S provided inadequate training to its employees as to how to use the saw in accordance with the Manual; (d) S & S actively removed the riving knife

**13.** This ruling should not be considered an endorsement of defendants' framing of the assumption of risk standard, which applies when a plaintiff "knows of the specific defect eventually causing her injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect." *Kupetz v. Deere & Co., Inc.,* 435 Pa.Super. 16, 644 A.2d 1213, 1221 (1994). In fact, quite the opposite is true. According to defendants, the risk plaintiff assumed "was when plaintiff departed from the cutting procedure he had been shown and needlessly placed his hand into a position directly in front of the hazardous spinning blade, which he knew would amputate his fingers, if contacted." (*See* Def. Br., at 11). This characterization of the "risk" lacks connection to the alleged defect of the product (i.e., its failure to warn of the necessity of using the riving knife during cross-cutting operations) and to the danger caused by the defect. Defendants' characterization inflates the assumption of risk defense into an absolute defense against all strict liability actions involving dangerous tools, and, in the process, contradicts the very wording of the standard itself. Thus, the appropriate formulation is that proffered by plaintiff; namely, whether plaintiff was aware of the hazard presented by using the saw without the anti-kickback device in place and whether plaintiff voluntarily chose to use the saw with such knowledge. *See, e.g., Wagner v. Firestone Tire & Rubber Co.,* 890 F.2d 652, 658 (3d Cir.1989) (plaintiff must have subject awareness of "defect" to voluntarily assume risk by failing to utilize a product's available safety feature); 3 West's Pa. Prac. § 9.63 (for purposes of determining whether a plaintiff assumed the risk, "it is not the voluntary nature of the plaintiff's physical movement that is relevant," but, instead, "it is the plaintiff's willingness to endure a recognized hazard" caused by the defect that gives rise to the defense).

and anti-kickback pawls from the Metzger guard; (e) plaintiff never read nor asked to read the Manual, despite the warning label on the saw stating "Read Manual before using saw;" (f) plaintiff placed his hand in front of the blade and pulled the saw forward onto his hand, despite instructions not to place his left hand closer than 9″ away from the blade path for the cut; and (g) plaintiff knew the risks of placing his hand in the path of the saw's blade. (*See* Nesbitt Deposition, attached as Ex. A to Def. Br., at 63–68). Assuming that defendant presents this evidence, a jury could find that the collective conduct of plaintiff and S & S was unforeseeable, extraordinary, and outrageous so as to amount to misuse of the product or highly reckless conduct. *See, e.g., Dillinger,* 959 F.2d at 444 (noting that plaintiff's conduct admissible in strict liability suit to undermine causation when plaintiff's conduct is grossly negligent and actively contributes to cause of accident); *Ballarini v. Clark Equip. Co.,* 841 F.Supp. 662, 665 (E.D.Pa. 1993) (permitting defendant to introduce evidence in strict liability case under Pennsylvania law that plaintiff's injuries were caused by his failure to use dumpster's alternative braking systems and by failure to read operator's manual).

In summary, the Court finds that it is inappropriate to resolve plaintiff's motion *in limine* prior to the presentation of evidence on plaintiff's conduct in conjunction with defendants' assumption of the risk defense and their various causation arguments. Granting plaintiff's motion at this stage would require factual determinations that are speculative and that impede on the function of the jury. Accordingly, the Court denies plaintiff's motion at this juncture.

## III. Conclusion

For the following reasons, this Court grants defendants' motions *in limine* upon

the conditions expressed in the opinion (Doc. No. 56, 57, 59); grants plaintiff's motion to preclude reference to plaintiff's juvenile conviction and past alcohol and drug use (Doc. No. 50); grants plaintiff's motion to preclude Gililland from testifying that plaintiff would not have followed additional warnings based upon human factors principles, unless plaintiff introduces evidence that an additional warning would have been directed to plaintiff (Doc. No. 51); grants plaintiff's motion to preclude evidence of or from the insurance claims investigation, but only to the extent that plaintiff seeks to preclude George Lampman from offering opinion testimony on the condition of the saw or on plaintiff's level of attentiveness at the time of the accident (Doc. No. 52); and denies plaintiff's remaining motions upon the conditions expressed in this opinion. An appropriate Order follows.

### *ORDER*

AND NOW, this 19th day of October 2005, upon consideration of the parties' motions *in limine,* and their responses thereto, it is hereby ORDERED as follows:

1. Plaintiff's Motion to Preclude Reference to Plaintiff's Juvenile Conviction and Past Alcohol and Drug Use (Doc. No. 50) is GRANTED.

2. Plaintiff's Motion to Preclude Defendants' Expert, Michael L. Gililland, From Testifying as to Human Factors at Trial (Doc. No. 51) is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED to the extent that plaintiff seeks to preclude Gililland from testifying that plaintiff would not have followed additional, adequate warnings based upon human factors principles, unless plaintiff introduces evi-

dence that the proposed additional warnings would have been directed to plaintiff. Plaintiff's Motion is DENIED in all other respects.

3. Plaintiff's Motion to Preclude Evidence of or from the Insurance Claims Investigation (Doc. No. 52) is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED to the extent that plaintiff seeks to preclude George Lampman from offering opinion testimony on the condition of the saw or on plaintiff's level of attentiveness at the time of the accident. Plaintiff's Motion is DENIED in all other respects.

4. Plaintiff's Motion to Preclude Defendants' Expert, Paul A. Cyr, from Testifying at Trial (Doc. No. 53) is GRANTED in part and DENIED in part. Plaintiff's Motion is GRANTED to the extent that plaintiff seek to preclude Cyr from testifying that the saw was not defective because it complied with various industry and federal standards. Plaintiff's Motion is DENIED in all other respects.

5. Plaintiff's Motion to Preclude Evidence of the Taping Up of the Lower Blade Guard (Doc. No. 54), Plaintiff's Motion to Preclude Evidence of Plaintiff's Own Conduct (Doc. No. 55), and Plaintiff's Motion to Preclude Cyr's Supplemental Report from Trial (Doc. No. 74) are DENIED.

6. Defendants' Motion to Preclude Evidence of Other Accidents Involving Radial Arm Saws (Doc. No. 56) is GRANTED. To the extent that plaintiff seeks to introduce a portion of the 1985 and 1989 studies, including specific accidents identified in the 1985 and 1989 studies, plaintiff must request a pre-trial hearing, make an offer of proof, and receive a ruling on the admissibility of such evidence.

7. Defendants' Motion to Preclude Plaintiff's Exhibits P41, P50, P52, P52, and P82 from Trial (Doc. No. 57) is GRANTED in part and DENIED in part. Defendants' Motion is GRANTED to the extent that Defendants seek to preclude plaintiff from introducing these exhibits at trial for the purpose of establishing that the saw was defective due to a lack of warnings. Defendants' Motion is DENIED in all other respects.

8. Defendants' Motion to Preclude Reference to Plaintiff's Exhibits P29–P40, P42–P49, and P58–P64 (Doc. No. 59) is GRANTED in part and DENIED in part. Defendants' Motion is GRANTED to the extent that Defendants seek to preclude plaintiff from introducing these exhibits at trial for the purpose of establishing that the saw was defective due to a lack of warnings. Defendants' Motion is DENIED in all other respects.